JOSEPH W. CLARK *vs* NATHAN CROSBY & others.

When, owing to the establishment of a new registry district, the certificate of entry to fore-close a mortgage was recorded in a different registry from that in which the mortgage was recorded, it was not necessary, under the Rev. Sts. *c.* 107, § 2, that the note of refer-ence to the record of the certificate should be made in the margin of the record of the mortgage within thirty days after the entry.

A mortgagee, having entered to foreclose and been in possession more than three years thereafter, agreed to quitclaim and release the premises, describing them as the "mort-gaged real estate," to A., if A. would pay before a certain day an amount which was equal to what was due on the mortgage on that day, less the amount of rents received by the mortgagee between the date of the agreement and such payment. On a bill by the mortgagor to redeem, filed after that day, *Held,* that the agreement was no extension of the right to redeem, and that it was immaterial that the agreement was procured by the mortgagor in the name of A., and was intended for his own benefit.

BILL IN EQUITY to redeem a lot of land in Lowell from a mortgage; filed against William P. Dean on December 27, 1861. Subsequently, by an amendment and supplemental bill, Susan Dean and Nathan Crosby were joined as defendants. The case was referred to a master, and, on the pleadings and his report, was reserved by *Wells,* J., for the determination of the full court. The material facts were as follows :

James Adams, being the owner of the lot in question, mort-gaged it to William P. Dean on October 4, 1852, and on Au-gust 25, 1854, conveyed it, subject to the mortgage, to Timothy D. Taylor; and it was sold on execution against Taylor, and conveyed by the sheriff's deed to the plaintiff, on July 27, 1861. The mortgage was recorded in the registry of deeds at Cam bridge on October 11, 1852. At that time there was but one registry of deeds for the county of Middlesex, but by the St. of 1855, *c.* 79, a registry of deeds for the northern district of the county, including Lowell, was established at Lowell, and by the St. of 1856, *c.* 254, it was enacted that all instruments re lating to real estate situated within the northern district, required by law to be recorded in a registry of deeds, should be recorded in the registry of the northern district, and that such registra-tion thereof should be effectual and sufficient for all purposes, so far as the place of registration was concerned.

William P. Dean made an entry for foreclosure, in presence of witnesses, and took possession of the land on November 25, 1857, and had the certificate of entry put on record in the reg istry for the northern district of Middlesex on the 27th of the same month; and there was a note of reference in the margin of the record in the Cambridge registry of the mortgage, to the record of this certificate, but there was evidence tending to show that such note was not made within thirty days after the put-ting on record of the certificate, and it appeared that, when pa pers were left in the Cambridge registry, they were not actually spread upon the record within thirty days after they were left.

William P. Dean assigned his mortgage to his mother, Susan Dean, October 4, 1859, and on December 21, 1861, Susan Dean conveyed the land covered by the mortgage to Nathan Crosby, by a quitclaim deed.

After the assignment of the mortgage to Susan Dean, but before her conveyance to Crosby, she made two agreements con-cerning the land, one with Isaac Pitman and the other with Samuel Fay. The agreement with Pitman was dated Novem-ber 13, 1860, and in it she covenanted that, in the event that the mortgaged premises should not be redeemed, and the fore-closure should become complete, and Pitman should before May 27, 1861, pay to her the sum of $675, (deducting there-from any rents received by her between the date of the agree-ment and such payment, less her expenses for the care of the premises,) then she would release and quitclaim to Pitman, or such person as he should direct, " the said mortgaged real es-tate," and all her right, title, interest and estate therein. The amount of principal and interest due on the mortgage on May 27, 1861, was $675. The agreement with Fay was dated May 24, 1861, and in it she covenanted that if Fay should, before November 27, 1861, pay to her the sum of $691.50, (deducting therefrom any rents received by her between the date of the agreement and such payment, less her expenses for the care of the premises,) then she would release and quitclaim to Fay, or such person as he should in writing direct, " the said mortgaged real estate," and all her right, title, interest and estate therein.

The amount of principal and interest due on the mortgage on November 27, 1861, was $691.50. This agreement was assigned by Fay to James W. Rollins. Neither Pitman, Fay nor Rollins ever tendered or paid anything under either of these agreements.

Timothy D. Taylor was examined as a witness, and testified that there was an attachment on the land at the time of the entry to foreclose; that the entry was made by William P. Dean at his suggestion, and for the purpose of preventing the attaching creditor from acquiring title; and that he procured the agreements between Susan Dean and Pitman and Fay to be made for his own benefit, using their names instead of his own.

There was some evidence that Crosby, at the time of his purchase from Susan Dean, knew of her agreements with Pitman and Fay.

*F. A. Brooks,* for the plaintiff. 1. The Rev. Sts. *c.* 107, § 2, provided that the certificate of entry to foreclose should, within thirty days after the entry, be recorded in the registry of deeds where the mortgage was recorded, " with a note of reference from each record to the other," and that no such entry should be effectual unless a certificate should be made and recorded in the manner provided. In this case, the note of reference was not made within thirty days.

2. The agreements with Pitman and Fay were extensions of the right to redeem. They speak of the land as " mortgaged real estate." The amount to be paid was that due on the mortgage. The provision for the deduction of rents implies an existing mortgage.

*A. P. Bonney,* for the defendant.

CHAPMAN, C. J. This is a bill in equity to redeem the land therein described, situate in the city of Lowell. Both parties claim title under James Adams, who executed a mortgage to the defendant William P. Dean, October 4, 1852. He conveyed his interest, subject to the mortgage, to Timothy D. Taylor, August 25, 1854, and it was sold on execution to the plaintiff, July 27, 1861.

The defendants contended that the mortgage had been fore-

Clark *v.* Crosby & others.

closed. It was recorded in the registry of deeds at Cambridge, October 11, 1852. Dean, the mortgagee, made an entry for foreclosure, in presence of witnesses, on November 25, 1857. But in the mean time the St. of 1855, *c.* 79, had established a registry of deeds in the northern district of Middlesex, including the city of Lowell; and the additional act, St. 1856, *c.* 254, required that all instruments relating to real estate situated in the northern district, required by law to be recorded in a registry of deeds, should be recorded in the registry of the northern district, and that such registration thereof should be effectual and sufficient for all purposes, so far as the place of registration is concerned. Dean recorded his certificate of possession in the northern district November 27, 1857. It is objected that this registration of the notice was insufficient; but the court are of opinion that it is clearly within the terms of the statutes.

William P. Dean conveyed his interest to his mother, Susan Dean, October 4, 1859, and she conveyed to the defendant Crosby, December 21, 1861. While Mrs. Dean was in possession, namely, November 13, 1860, she executed an instrument to Isaac Pitman, in which she promised that if he should pay her within a time stipulated a certain amount, which was equal to the amount due on the mortgage with interest, she would release the premises to him. On May 24, 1861, she executed another instrument to Samuel Fay, of a similar purport, and he assigned it to James W. Rollins. It is contended that each of these instruments operated as a waiver of the foreclosure, or an extension of the time of foreclosure. But the answers to this suggestion are obvious. When the instrument was made to Pitman, her title had already become absolute by the lapse of three years after the entry. Neither Pitman nor Fay had any interest in the equity, or any privity with the plaintiff. Nor did either of them ever comply with the condition by payment or tender of the money. Nor does it appear that Rollins, the assignee of the instrument made to Fay, ever made any agreement with Mrs. Dean in respect to the foreclosure. The facts stated by Taylor in his testimony, that the instruments were executed for his benefit, and that he suggested the foreclosure, do not appear to

be material. No fact appears which has any tendency to show that the foreclosure was not perfected before the bill was filed. *Bill dismissed, with costs.*