HERBERT NEWTON JOYNER & others *vs.* THE LENOX SAV-INGS BANK & another.

Berkshire. September 16, 1947. — November 28, 1947.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Mortgage,* Of real estate: foreclosure. *Waiver. Notice. Constitutional Law,* Due process of law. *Fraud. Equity Pleading and Practice,* Master: report of evidence, exceptions to report; Appeal.

There is no statutory requirement that a mortgagee under a mortgage of real estate in the statutory form, entering to foreclose the mortgage and recording a certificate thereof under G. L. (Ter. Ed.) c. 244, §§ 1, 2, shall give notice thereof either to the mortgagor or to the holder of a junior mortgage.

An entry to foreclose, for breach of condition through failure to pay interest and taxes, a mortgage of real estate in the statutory form securing a demand note was not rendered invalid by the mere fact that it was not preceded by a demand.

Foreclosure of a mortgage of real estate in this Commonwealth, owned by a citizen of Colorado, by entry and the recording of a certificate under G. L. (Ter. Ed.) c. 244, §§ 1, 2, without notice thereof to the owner, was not in violation of art. 4, § 2, of the Federal Constitution or of § 1 of the Fourteenth Amendment thereto.

Findings by a master upon an issue, in a suit in equity by an owner of real estate against a bank mortgagee, whether the defendant had waived an entry under G. L. (Ter. Ed.) c. 244, § 1, to foreclose the

mortgage: "The bank never intended to open or waive said entry. On the contrary, it . . . intended at all times to keep said entry in full force and effect until it ripened into a full and complete foreclosure": was interpreted by this court to mean that there was no ultimate intent to relinquish a known right, and to leave open the question, whether some intentional act of the bank was as matter of law a waiver or required an inference of waiver.

The mere receipt, by a mortgagee of real estate who has made entry to foreclose the mortgage and has recorded a certificate thereof under G. L. (Ter. Ed.) c. 244, §§ 1, 2, of rents for the premises, and their application to the payment of sums due under the provisions of the mortgage, are not a waiver of the entry if the amount currently owing under such provisions is not thereby paid in full.

Neither a finding of conduct on the part of a bank, mortgagee of real estate, so inconsistent with reliance by it upon an entry to foreclose and a recording of a certificate thereof under G. L. (Ter. Ed.) c. 244, §§ 1, 2, as to compel as a matter of law a conclusion that the bank had waived the entry, nor a finding of fraud on its part, was required by findings respecting its continuing as before the entry to receive the rents of the property and to apply them upon the owner's mortgage obligations, its having commenced and subsequently discontinued proceedings for foreclosure by sale, certain communications by it to the owner and a junior mortgagee, including statements of account and a communication, sent long after the entry and after the discontinuance of the proceedings for foreclosure by sale, to the effect that foreclosure would be "instituted" unless the mortgage debt were paid, and its failure to give the owner or junior mortgagee notice of the entry.

On an appeal in a suit in equity, this court did not consider evidence reported by a master without authority or matters in the appellant's brief but not in the record.

An interlocutory decree confirming a master's report impliedly overruled exceptions to the report.

BILL IN EQUITY, filed in the Superior Court on October 4, 1945.

The case was heard by *Leary*, J.

In this court the case was submitted on briefs.

*H. N. Joyner* & *F. H. Wright*, for the plaintiffs.

*G. A. Newman*, for the defendant The Lenox Savings Bank.

*F. M. Myers* & *P. A. Tamburello*, for the defendant Holmes.

WILKINS, J.   The main objective of this bill in equity is an adjudication that the plaintiffs Herbert Newton Joyner and Beatrice E. Joyner, his wife, are the owners of certain real estate in Lenox subject to a first mortgage held by the defendant bank and to a second mortgage held by their

son, the plaintiff Herbert C. Joyner, as assignee. This involves an adjudication that certain foreclosure proceedings conducted by the bank are of no effect and that a deed from the bank to the defendant Holmes, who purchased from the bank and now occupies the real estate, should be cancelled. There are, among others, prayers for an accounting, for an order for delivery of possession, and for "rent or damages . . . for the unlawful detainer of said premises" and "for the use and occupation of said premises . . . [and] personal property" thereon. The case was referred to a master, who filed a report, which was confirmed. The plaintiffs appealed from a final decree dismissing the bill, and from another "final decree," entered on the same day, dismissing the bill against the defendant Holmes. The second decree is superfluous and we disregard it.

On April 13, 1933, the plaintiffs Herbert Newton Joyner and Beatrice E. Joyner (hereinafter sometimes called the owners), as tenants by the entirety, received a deed to the real estate from one Cutting, and assumed and agreed to pay two mortgages. The first mortgage, in statutory form and dated October 19, 1928, was given by one Reading to the defendant bank to secure the payment of a promissory note for $1,500 payable on demand with interest at five and one half per cent payable semiannually. The second mortgage was given by Reading to one Reagan to secure the payment of a note for $500. On August 18, 1933, the second mortgage was discharged, and there was substituted a new second mortgage, running from the owners to Reagan, in the principal sum of $500 payable in two years with interest at six per cent. On February 18, 1936, the new second mortgage was assigned for a valuable consideration to the plaintiff Herbert C. Joyner.

From 1933 to 1937 the owners made their home on the real estate. In the latter year the three plaintiffs went to Denver, Colorado, where they all remained until 1944 except for a brief visit to the real estate by the plaintiff Herbert C. Joyner in 1938. During their absence the real estate was occupied by three successive tenants, a Blanchard family until September, 1940, a Crowell family from Novem-

ber, 1940, until September 15, 1942, and the defendant Holmes until February 26, 1943, when he in good faith purchased the property from the bank and proceeded to make improvements. The original rental to the Blanchards was made by the owners by correspondence from Denver. "Sometime afterwards they made an agreement with the bank whereby the Blanchards would pay the rent . . . to the bank. The bank accepted this arrangement and collected such rents." The rents, however, were insufficient to pay interest and taxes, and as early as some time before November 16, 1939, the owners were in default as to both. On that date the bank began proceedings for foreclosure by sale, and advertised a sale by public auction on the property to be held on December 9, 1939, at 2 P.M. On November 15, 1939, the attorney for the bank wrote the plaintiff Beatrice E. Joyner, "Your letter about the place in New Lenox is at hand and I have taken the matter up with Mr. Sears [treasurer] at the savings bank. He states that the investment committee has gone over the proposition carefully and the committee finds that the property is not being kept up as it should be. The Blanchards are paying the rent to the bank but there is still due taxes for 1938 amounting to $51.75 and 1939 amounting to $55.20 and another tax will be due on January 1st next. There is also due $36.08 for interest. Mr. Sears says that if these amounts are paid up at once that the foreclosure proceedings which have already been started will be dropped. There would be a small charge for advertising and for legal services in preparing the foreclosure papers. I will send you a notice of the sale probably on Friday of this week and if you will pay the above charges at once I will cancel the advertisement and stop any further expense." On December 1, 1939, the bank made an entry to foreclose, without informing the owners, and a certificate under oath of two competent witnesses to prove the entry was duly recorded the following day. G. L. (Ter. Ed.) c. 244, §§ 1, 2. Thereafter "the bank continued to collect all rents" and applied them to the payment of interest, taxes, and repairs, so that at the end of the three year period following the entry taxes

and repairs were paid in full, but there were arrears of interest in the amount of $128.07.

The only money other than rents paid to the bank after the beginning of foreclosure proceedings was $75 telegraphed by the plaintiff Herbert C. Joyner, which was received December 8, 1939, and applied toward legal services and expenses of those proceedings. On December 9, 1939, the bank telegraphed the plaintiff Herbert C. Joyner, "Foreclosure proceedings Lenox property postponed two weeks, same hour and place. Bank sending statement." On the same day the bank sent him a statement showing the rents collected, the disbursements made, and the state of the account on December 1, when interest and taxes in arrears were respectively $81.08 and $55.20, and there was a balance of $5.75, which the bank intended to apply in payment of taxes.

On December 15, 1939, the plaintiff Herbert C. Joyner wrote a letter to the bank, which, after discussing the account and the real estate, concluded, "As to your loan, I presume what you are interested in is the interest and the security. The security is there, except for the tax arrears which were allowed to accumulate unknown to me. If I see that these taxes are paid, the '39's, and the 40's taxes when due, and apply my credit with you to pay all delinquent interest, and forward any additional amounts necessary would you want to allow the principal loan to stand? Or if you wish to call the loan, I can in a reasonable time arrange to raise the money here to pay it off, or refinance there for a smaller amount, say $1,000. I will make any reasonable agreement with . . . the bank to work out the Lenox property and protect my mortgage on it (about $540) and protect my parents' interest. . . . Please let me know as soon as possible what arrangements can be made bearing in mind the length of time it takes to communicate." On December 22, 1939, the bank telegraphed in reply, "Letter received, will postpone proceedings two weeks more pending adjustment." No adjustment was ever made or attempted by any party. Foreclosure by sale was then discontinued and never resumed. There was never a foreclosure by sale.

The next communication was not until September 11, 1940, when the bank wrote the plaintiff Herbert C. Joyner, "Enclosed find a demand from the Lenox Savings Bank for payment of its note on your property in New Lenox. I understand that the tenant, Mrs. Blanchard, moved out and that the place is in need of repairs. The bank has given me instructions to foreclose the mortgage if the note, back interest and taxes are not paid at once." The enclosure was, "The Lenox Savings Bank hereby demands payment of its note of $1,500, secured by mortgage on your real estate in New Lenox, Mass., together with interest, amounting to $129.58, and 1940 taxes of $55.20. Foreclosure proceedings will be instituted if same is not paid at once." The plaintiff Herbert C. Joyner wrote the attorney for the bank in reply. After questioning the accuracy of the account he said, "Not having heard from the bank since last December, I naturally assumed that the rents were being paid and collected and credited against these small carrying charges, if not, why was I not immediately notified? If the Blanchards had moved out, which I think in view of the slow manner in which they meet their obligations, is perhaps just as well, why was not the property immediately placed on the rental market, advertised, and rented to substantial tenants, and immediate notice sent to me? Please secure a complete statement from the bank as to our account, and find out what condition the property is in, and where the Blanchards are, so that steps can be taken to collect the balance of the rent accrued. And be assured that I will immediately take care of any further arrears as shown by a complete statement, and in fact, no arrears would have accumulated on my account if I had been informed. If repairs are needed, please specify exactly what repairs are needed and the approximate cost so that I may proceed accordingly." The bank never replied.

On March 29, 1941, the bank wrote the plaintiff Beatrice E. Joyner, "We enclose a certificate of [fire insurance] policy . . . covering $2,250 on dwelling in New Lenox. The policy has been renewed for the usual term of one year from April 2, and the original policy has been delivered

to the Lenox Savings Bank, mortgagee. A statement of your account is enclosed." On June 8, 1942, the bank wrote a letter, which was received by the plaintiff Herbert Newton Joyner, asking that the property be covered to the extent of the mortgage by war damage insurance.

In addition to the foregoing the master made other findings. Previous to April or May, 1943, none of the plaintiffs had actual knowledge of the entry to foreclose the mortgage. The letters of September 11, 1940, "unintentionally and unwittingly misled" the plaintiffs, and were understood by them to mean that no foreclosure proceedings were then pending and that all proceedings previously begun had been discontinued. The bank "unintentionally misled" the plaintiffs, who "as a consequence thereof . . . were deprived of the opportunity to redeem their property from the entry." The mortgaged premises were at all times badly in need of repair, and the owners appeared to be indifferent to remedying the situation. They were "careless and negligent," and "did not alert themselves to learn directly from the bank what the situation was concerning the physical and financial condition of their property, nor what became of the foreclosure proceedings" between December 22, 1939, and September 11, 1940. The bank in its dealings with the plaintiffs remained silent about its entry.

A mortgagor is entitled to possession until there is a default. G. L. (Ter. Ed.) c. 183, § 26. *Krikorian* v. *Grafton Co-operative Bank,* 312 Mass. 272, 274–275. But in the event of default a mortgagee is entitled to take immediate possession by an open and peaceable entry on the mortgaged premises, which if continued for three years would be effective to foreclose the mortgage. G. L. (Ter. Ed.) c. 244, § 1. *Montuori* v. *Bailen,* 290 Mass. 72, 74. *Corrigan* v. *Payne,* 312 Mass. 589, 591. In that event the mortgagee is under a duty to account for the rents and profits, and is entitled to be allowed for all amounts expended in reasonable repairs and improvements and for lawful taxes paid. G. L. (Ter. Ed.) c. 244, § 20. *Altobelli* v. *Montesi,* 300 Mass. 396, 400.

The bank relies upon peaceable possession for three years

following its entry on December 1, 1939, as proved by recording the certificate of two competent witnesses. G. L. (Ter. Ed.) c. 244, § 2.[1] There was no statutory requirement that the bank notify the mortgagors or the assignee of the subsequent mortgagee of the entry, which, without more, was effective by reason of the recording of the certificate. *Bennett* v. *Conant*, 10 Cush. 163, 167. *Hobbs* v. *Fuller*, 9 Gray, 98. *Ellis* v. *Drake*, 8 Allen, 161. The contention that there was no valid entry because there was no demand is untenable. The mortgage was in statutory form. G. L. (Ter. Ed.) c. 183, § 20. There were in any event breaches of the statutory condition in failure to pay interest and taxes. *American House Hotel Co.* v. *Hemenway*, 237 Mass. 180. *Wiggin* v. *Lowell Five Cent Savings Bank*, 299 Mass. 518. *Choate* v. *Assessors of Boston*, 304 Mass. 298, 304. *Lynn Five Cents Savings Bank* v. *Portnoy*, 306 Mass. 436. See *Stevens* v. *Cohen*, 170 Mass. 551. There is nothing in the contention that foreclosure by entry under the statute is, as against citizens of Colorado, in violation of § 2 of art. 4 of the Constitution of the United States or of § 1 of the Fourteenth Amendment to the Constitution of the United States. *Pennoyer* v. *Neff*, 95 U. S. 714, 723, 734. *Scott* v. *Paisley*, 271 U. S. 632. See *Curti* v. *Pacific Mortgage Guaranty Co.* 87 Fed. (2d) 42 (C. C. A. 9).

The plaintiffs, however, urge that for sundry reasons the entry was waived. The master did not in terms find whether there was a waiver. His findings were: "The bank never intended to open or waive said entry. On the contrary, it (the bank) intended at all times to keep said entry in full

---

[1] Sections 1 and 2 read as follows: § 1. "A mortgagee may, after breach of condition of a mortgage of land, recover possession of the land mortgaged by an open and peaceable entry thereon, if not opposed by the mortgagor or other person claiming it . . . and possession so obtained, if continued peaceably for three years, shall forever foreclose the right of redemption." § 2. "If an entry for breach of condition is made without a judgment, a memorandum of the entry shall be made on the mortgage deed and signed by the mortgagor or person claiming under him, or a certificate, under oath, of two competent witnesses to prove the entry shall be made. Such memorandum or certificate shall within thirty days after the entry . . . be recorded in the registry of deeds for the county or district where the land lies, with a note of reference, if the mortgage is recorded in the same registry, from each record to the other. Unless such record is made, the entry shall not be effectual for the purposes mentioned in the preceding section."

force and effect until it ripened into a full and complete foreclosure of its said mortgage." We interpret this to mean that there was no ultimate intent to relinquish a known right (see *Nashua River Paper Co.* v. *Lindsay,* 242 Mass. 206, 208), but that there remains the question whether some intentional act of the bank was as matter of law a waiver or requires an inference of waiver. See *Jones* v. *Webb,* 320 Mass. 702, 705–706.

Such waiver could arise out of an act inconsistent with reliance on foreclosure. *Trow* v. *Berry,* 113 Mass. 139, 147. Thus, as is provided by statute, recovery of a deficiency judgment on the ground that the value of the land mortgaged at the time of the foreclosure was less than the amount due, opens the foreclosure. G. L. (Ter. Ed.) c. 244, § 35. *Morse* v. *Merritt,* 110 Mass. 458, 460. On the other hand, in *Tompson* v. *Tappan,* 139 Mass. 506, 507, it was said, "The fact, that, before the expiration of three years from the date of such entry, the mortgagee received the avails of other security held by him for the same debt, but to an amount less than the amount of the mortgage debt, does not of itself, and without other evidence, prove an intention on his part to waive the foreclosure."

The mere receipt of rents and their application to the payment of sums due on the mortgage debt are not a waiver if the amount currently owing on that debt is not thereby paid in full. *Welch* v. *Adams,* 1 Met. 494. *Lawrence* v. *Fletcher,* 10 Met. 344, 347. *Shepard* v. *Richards,* 2 Gray, 424, 428. *Hobbs* v. *Fuller,* 9 Gray, 98. *Cook* v. *Johnson,* 121 Mass. 326. *Porter* v. *Hubbard,* 134 Mass. 233, 237. *Skolnick* v. *East Boston Savings Bank,* 307 Mass. 1, 3. See *Bartlett* v. *Tarbell,* 12 Allen, 123, 126–127; *Crowley* v. *Adams,* 226 Mass. 582, 584–585. These are objects for which possession of mortgaged property is commonly taken, and are not inconsistent with possession for the purposes of foreclosure. Nothing appearing in *Willard* v. *Kimball,* 277 Mass. 350, 358, is authority to the contrary.

The plaintiffs, however, insist that there was an inconsistency, and assert that the entry was only a formal one. See *Chamberlain Garages, Inc.* v. *New England Bond &*

*Mortgage Co.* 267 Mass. 453, 458. We are unable to agree. In our opinion the continued receipt of the rents after the entry and the recording of the certificate of entry, which was notice to the world, was prima facie proof of the possession of a mortgagee to whom the tenants had attorned. See *Winnisimmet Trust, Inc.* v. *Libby,* 234 Mass. 407, 410, and cases cited; *In re Genestri,* 12 Fed. (2d) 456, 457 (D. C. Mass.). Compare *Lamson & Co. (Inc.)* v. *Abrams,* 305 Mass. 238, 242.

That the bank before entry had been collecting the rents seems to us to be immaterial. In *Swift* v. *Mendell,* 8 Cush. 357, the mortgagor himself remained in occupation after the entry. It did not appear whether he paid rent, but this fact was held to be immaterial. At page 358, the court speaking through Shaw, C.J., said, "Nor is there any importance in the fact, that there was no change in the occupation. There is an obvious distinction between the occupation and possession of an estate. By this finding we consider that the mortgagor continued as before, occupying the premises; but the difference is, that after the entry to foreclose, he held as tenant to the mortgagee and in subordination to his right of possession." See *Erskine* v. *Townsend,* 2 Mass. 493, 495–496.

Another ground upon which the plaintiffs rely to show waiver is that on December 8, 1939, the plaintiff Herbert C. Joyner, who was assignee of the second mortgage but had not assumed the first mortgage, paid $75, which the bank "accepted and applied toward legal services and expenses on account of the foreclosure proceedings." We interpret this to refer to expenses of the foreclosure by sale. The payment was made to prevent rights under the second mortgage being wiped out by a foreclosure of the first mortgage. See *Pearmain* v. *Massachusetts Hospital Life Ins. Co.* 206 Mass. 377, 379; *Williams* v. *Old Colony Trust Co.* 222 Mass. 378. That it was not a payment on account of the mortgage debt was recognized by the plaintiff Herbert C. Joyner, when he wrote the bank on December 15, 1939, "You have on hand only $5.75 to my parents' credit. And you are holding $75 to my credit." That the mort-

gagee could have charged these expenses against the proceeds of the foreclosure sale, had it been completed (G. L. [Ter. Ed.] c. 183, § 27), is beside the point. In view of his specific findings the general finding of the master, "Aside from the rents collected by the bank this $75 was the only money received by it on account of either the principal or interest of said bank mortgage, after the beginning of the foreclosure proceedings," if taken literally, cannot stand. Apart from the matter of rents discussed above, our decision rests upon the ground that it is not shown that any payment was made to the bank for application to the mortgage indebtedness, or was applied by the bank to the mortgage indebtedness.

The other grounds of waiver urged by the plaintiffs may be considered briefly. None of them avails the plaintiffs, especially when considered in connection with the finding that there was no intent to waive the entry. The sending of statements of the account on December 9, 1939, and on March 29, 1941, could not have this effect. *Hobbs* v. *Fuller*, 9 Gray, 98. Nor could the failure to respond to the letter of the plaintiff Herbert C. Joyner in reply to the bank's letter of September 11, 1940. This fell short of a refusal to render an account, and even that is not a waiver. See *Sanborn* v. *Dennis*, 9 Gray, 208. The same is true of the demand upon the assignee of the second mortgage for the payment of the note in September, 1940, the sending of a certificate of fire insurance to the plaintiff Beatrice E. Joyner on March 29, 1941 (see *Fowley* v. *Palmer*, 5 Gray, 549, 551), and the sending of what was apparently a form letter respecting war damage insurance on June 8, 1942, which was received by the plaintiff Herbert Newton Joyner. The offer to drop foreclosure proceedings in the bank's letter of November 15, 1939, to the plaintiff Beatrice E. Joyner, could refer to the foreclosure by sale. But if it also be treated as including the foreclosure by entry, it was conditional upon a payment of certain specified amounts on account of interest and taxes which was not made. See *Lawrence* v. *Fletcher*, 10 Met. 344, 347; *Clark* v. *Crosby*, 101 Mass. 184, 187; *Worthy* v. *Warner*, 119 Mass. 550,

554–555; *American House Hotel Co.* v. *Hemenway*, 237 Mass. 180, 182–183; *McCarthy* v. *Simon*, 247 Mass. 514, 522; *Sandler* v. *Green*, 287 Mass. 404, 408–409. For the same reason it is unsound to argue that because the sale was dropped the entry fell with it. Likewise no waiver arises as a necessary inference from references to the institution of foreclosure proceedings in the bank's correspondence subsequent to the entry. Also this could refer to a foreclosure by sale. See *Fitchburg Co-operative Bank* v. *Normandin*, 236 Mass. 332; *Harlow Realty Co.* v. *Cotter*, 284 Mass. 68, 70.

The plaintiffs further seem to contend that a finding of fraud is required from the silence of the bank with respect to its entry, upon which it at all times intended to rely, when taken in connection with the statements in the bank's letters of September 11, 1940, to the plaintiff Herbert C. Joyner, which the master found "unintentionally misled" the plaintiffs. The statements in question, "The bank has given me instructions to foreclose the mortgage" and "Foreclosure proceedings will be instituted," could, and apparently did, refer to a foreclosure by sale. In the face of the provisions of G. L. (Ter. Ed.) c. 244, § 2, and the broad interpretation given by our decisions to the effect of recording a certificate of entry in accordance therewith, the plaintiffs' individual belief at variance with that section, induced by nothing more than the statements in the letters, cannot properly be made a foundation for this suit.

The plaintiffs base some arguments respecting waiver on certain of the entries purporting to have been made by the bank on its records and which are printed in the record as an appendix to the master's report. The master makes no findings with respect to the entries in question, but in connection with a finding as to arrears of interest on December 1, 1939, says, "See copy of defendants' exhibit 9, appended hereto." If we assume that the entries referred to are those appended to the report, notwithstanding that they are not designated as exhibit 9, we nevertheless cannot consider them, as the order of reference to the master did not authorize him to report evidence. *Lindsay* v. *Swift*,

230 Mass. 407, 409. *Jameson* v. *Hayes,* 250 Mass. 302, 306–307. *Narragansett Amusement Co.* v. *Riverside Park Amusement Co.* 260 Mass. 265, 282. *Leventhal* v. *Jennings,* 311 Mass. 622, 623–624. A fortiori we cannot consider references in the plaintiffs' brief to an exhibit said to have been introduced in evidence, but which is not part of the appeal record. *Staples* v. *Collins,* 321 Mass. 449, 450–451.

The plaintiffs argue that certain of their exceptions to the master's report were improperly overruled. While there was no decree in terms disposing of the exceptions, they were impliedly overruled by the decree confirming the master's report. *Lee* v. *Methodist Episcopal Church in the United States,* 193 Mass. 47, 48. No error, however, is shown. The only questions not hereinbefore discussed raised by the exceptions are based upon unreported evidence, and it does not appear that there was any compliance with Rule 90 of the Superior Court (1932). *Minot* v. *Minot,* 319 Mass. 253, 258–259, and cases cited. See *Fairbanks* v. *Newhall,* 222 Mass. 598.

We have endeavored to consider all the arguments contained in the plaintiffs' voluminous brief. We conclude that there is no merit in any of them.

The final decree dismissing the bill is affirmed. The appeal from the second so called "final decree" dismissing the bill against the defendant Holmes is dismissed.

*So ordered.*