MARILYN SANTIAGO[1] vs. ALBA MANAGEMENT, INC.,
& another.[2]

No. 09-P-578.

Middlesex. November 12, 2009. - June 16, 2010.

Present: McHugh, Brown, & Hanlon, JJ.

*Mortgage,* Real estate, Foreclosure, Equity of redemption. *Real Property,* Mortgage.

In a civil action seeking a judgment declaring that the defendant had both legal and equitable title to a parcel of property against which the plaintiff wished to levy, the judge properly granted summary judgment in favor of the plaintiff, where the defendant's peaceable entry on and taking possession of the property for breach of conditions of the mortgage that the defendant held on the property, and its recording of a certificate of entry, together with the passage of more than three years after the entry, effected a foreclosure of the right of redemption of the mortgage, with the result that the defendant owned the property in fee. [48-52]

CIVIL ACTION commenced in the Superior Court Department on November 15, 2007.

The case was heard by *Bonnie H. MacLeod-Mancuso,* J., on a motion for summary judgment, and a motion for reconsideration was heard by her.

*John J. Regan* for the defendants.

*Benjamin Hiller* (*Jeffrey M. Feuer* with him) for the plaintiff.

McHUGH, J. After recovering a judgment on behalf of his minor daughter against the defendant, Alba Management, Inc. (Alba), Ramon Santiago commenced this action to obtain a declaratory judgment that Alba has both legal and equitable title to a parcel of real estate against which Santiago wishes to levy.

[1]By her father and next friend, Ramon Santiago.

[2]Windsor Realty, LLC.

A judge of the Superior Court allowed Santiago's motion for summary judgment and entered the declaration he sought. Alba and Windsor Realty, LLC (Windsor), appeal, contending that the record discloses that title to the property is held by Windsor. We disagree and affirm.

*Background.* The present action follows a suit Santiago brought against Alba in the Housing Court, as father and next friend of his minor daughter, Marilyn, to recover for lead poisoning. On November 1, 2007, Santiago and Alba entered an agreement for judgment in that suit for $300,000, but the judgment stated that Santiago could only attempt to collect the judgment from "any interest that Alba now has or may have in the property located at 177 Elm Street, Holyoke, Massachusetts" (the property). The agreement also stated that Alba denied it had any current interest in the property, while Santiago maintained that Alba was the owner.

In an effort to resolve that dispute, Santiago commenced the present action for declaratory relief seeking to establish Alba's ownership. Windsor, which claims to have obtained title to the property through a series of transfers, was made a defendant in the declaratory judgment action.

Viewed in the light most favorable to Alba and Windsor, see, e.g., *Lyons* v. *Nutt*, 436 Mass. 244, 245 (2002), the record shows that, on February 9, 1988, an entity known as Coats & Luke Associates Limited Partnership granted the First National Bank of Boston a mortgage (the Coats & Luke mortgage) on the property and ten other parcels of land in Holyoke to secure payment of two notes, one in the amount of $4,475,524 on which it was the obligor and the other in the amount of $524,476 on which a man named Lebner was the obligor. The mortgage was upon the statutory condition and contained a statutory power of sale. See G. L. c. 183, §§ 20, 21.

On December 4, 1992, the bank assigned the Coats & Luke mortgage to Alba. Four days later, Alba made peaceable entry on the property for "breach of condition(s) of [the] mortgage" and took possession of it.[3] A certificate of entry was recorded the same day.

---

[3] The record does not disclose whether Alba peaceably entered or foreclosed on any of the other ten parcels.

On February 16, 1996, more than three years after its peaceable entry, Alba purported to assign the Coats & Luke mortgage on the property to Sylvan Corp., as trustee of the Appleton & Elm Realty Trust (Sylvan, trustee). Thereafter, two more purported transfers occurred. On April 30, 2002, Sylvan, describing itself as the holder of the Coats & Luke mortgage, executed what it described as a "foreclosure deed" granting the property to Sylvan Corp., free of the trust, for consideration of $50,000. The deed recited that the mortgage debt had not been paid, that Sylvan, as trustee, had sold the property at public auction,[4] and that the auction had been preceded by appropriate published notices of sale.[5] On October 16, 2002, Sylvan Corp. executed a quitclaim deed purporting to convey the property to Windsor for $960,000.

Alba and Windsor moved to dismiss Santiago's complaint, and Santiago moved for summary judgment. After a hearing, a judge of the Superior Court issued a written memorandum denying the motions. Santiago moved for reconsideration, and after a second hearing, the judge, concluding that "as a matter of law, there was no mortgage in existence for Alba to assign to Sylvan," issued a second memorandum allowing Santiago's motion for summary judgment, ordering entry of a declaratory judgment stating that Alba has owned the property continuously since December 9, 1995, and explaining her reasoning for both actions. This appeal followed entry of the judgment.

*Discussion.* Understanding why the motion judge was correct is aided by a brief discussion of basics. First of all, under the Massachusetts title theory of mortgages, see *Murphy* v. *Charlestown Sav. Bank*, 380 Mass. 738, 747 (1980), a mortgage "splits the title in two parts: the legal title, which becomes the mortgagee's, and the equitable title, which the mortgagor retains." *Maglione* v. *BancBoston Mort. Corp.*, 29 Mass. App. Ct. 88, 90 (1990). See *Atlantic Sav. Bank* v. *Metropolitan Bank & Trust Co.*, 9 Mass. App. Ct. 286, 288 (1980). The object of the split is twofold and has important consequences.

---

[4]Apart from the deed's recitation that a public sale had occurred, and the advertisements that preceded the sale, no details of the sale appear in the record.

[5]Again, the record does not disclose whether any of the other properties covered by the Coats & Luke mortgage were part of the sale.

"The first important object . . . is to give to the mortgagee an effectual security for the payment of a debt; another, is to leave to the mortgagor . . . the full control, disposition and ownership of the estate. . . . [The mortgage] is for all intents and purposes security for a debt, not an estate. Until foreclosure, the interest of the mortgagee is a right to acquire an estate in the land rather than an actual estate. . . .

"The effect of the exercise of the power of sale [is] to terminate the estate of the mortgagor by forever barring him and those claiming under him from all right and interest in the mortgaged premises, which he had before the sale, and transferring an absolute estate to the mortgagee. The mortgagee could purchase at the sale and the transaction is of the same character and legal effect as in the case of purchase by a stranger.

". . . .

"When the [mortgagee buys] at the foreclosure sale and [gives] a deed to [himself], [the mortgagee] end[s] the equity of redemption of the mortgagor, and [becomes] responsible for the application of the purchase price as though [he] had received it upon a foreclosure sale to a stranger, and [is] bound to apply it to the payment of the mortgage debt."

*Charlestown Five Cents Sav. Bank* v. *White*, 30 F. Supp. 416, 418-419 (D. Mass. 1939). "Once the mortgagee has purchased the property by foreclosure deed, '[t]he land [is] no longer mortgaged land. With relation thereto the [mortgagee] [is] no longer the mortgagee thereof holding title thereto for security, but [is] the owner thereof free from the mortgage.' " *Ideal Fin. Servs., Inc.* v. *Zichelle*, 52 Mass. App. Ct. 50, 61 (2001), quoting from *Natick Five Cents Sav. Bank* v. *Bailey*, 307 Mass. 500, 504 (1940).

Foreclosure by sale, however, is only one of the ways in which a mortgagee can take advantage of the security the mortgage provides. Foreclosure can also be effected, as it was in this case, by the mortgagee's peaceable entry, proper filing of a certificate

memorializing that entry, and passage of time.[6] See G. L. c. 244, § 1.[7] That method of foreclosure leads to the same result.

> "A mortgagor is entitled to possession until there is a default. . . . But in the event of default a mortgagee is entitled to take immediate possession by an open and peaceable entry on the mortgaged premises, which if continued for three years would be effective to foreclose the mortgage."

*Joyner* v. *Lenox Sav. Bank,* 322 Mass. 46, 52 (1947). The three-year holding period begins to run when the mortgagee records a proper memorandum or certificate of entry. See G. L. c. 244, §§ 1, 2. When a proper memorandum or certificate is filed, the mortgagor's failure to redeem within the three years "shall forever foreclose the right of redemption." G. L. c. 244, § 1. See *Swift* v. *Mendell,* 8 Cush. 357, 358 (1851); *Wornat Dev. Corp.* v. *Vakalis,* 403 Mass. 340, 345-346 (1988) ("In Massachusetts, a mortgagee who makes a peaceable entry, records a certificate of entry, and retains possession for three years, extinguishes the mortgagor's right of redemption"). When the right of redemption is foreclosed, the mortgage has done its work and the property is no longer mortgaged land. Instead, the former mortgagee owns the legal and equitable interests in the property and the mortgage no longer exists.

Application of those basic principles means that on February 16, 1996, when Alba purported to assign the mortgage to Sylvan, there simply was no mortgage to assign. More than three years had passed since Alba filed the certificate of peaceable entry. The equity of redemption was gone and with it the mortgage. At that point, Alba owned the property in fee.

---

[6]Two other methods of foreclosure are available, "foreclosure by action, G. L. c. 244, §§ 4-10; and [a] bill in equity, G. L. c. 185, § 1(*k*). The [first] method is seldom used and the [second] is available only in extraordinary circumstances." *Negron* v. *Gordon,* 373 Mass. 199, 205 n.4 (1977).

[7]"A mortgagee may, after breach of condition of a mortgage of land, recover possession of the land mortgaged by an open and peaceable entry thereon, if not opposed by the mortgagor or other person claiming it, or by action under this chapter; and possession so obtained, if continued peaceably for three years from the date of recording of the memorandum or certificate as provided in [§ 2], shall forever foreclose the right of redemption." G. L. c. 244, § 1, as appearing in St. 1991, c. 157, § 2.

There is no merit to Alba's claim that entry of summary judgment in Santiago's favor was improper because Santiago failed to show affirmatively that the mortgage debt had been paid in full.[8] Indeed, a post-foreclosure deficiency is a common occurrence because "[w]hen a mortgage is foreclosed by entry and possession for three years, the mortgage debt is discharged [only] 'to the extent of the value of the land at that time.' " *Boston* v. *Gordon*, 342 Mass. 586, 593 (1961), quoting from *Morse* v. *Merritt*, 110 Mass. 458, 460 (1872). Additional portions of the mortgage debt may also be discharged during the mortgagee's occupancy after the peaceable entry. During that occupancy, "the mortgagee is under a duty to account for the rents and profits, and is entitled to be allowed for all amounts expended in reasonable repairs and improvements and for lawful taxes paid." *Joyner* v. *Lenox Sav. Bank*, 322 Mass. at 52.[9] The net rents and profits during occupancy, therefore, may become additional payments on the debt.

Nevertheless, a mortgage does not somehow survive foreclosure because some portion of the underlying debt remains unpaid when foreclosure occurs. "[I]n a mortgage, the note is the primary document, and the mortgage itself is only security for the payment of the note." Eno & Hovey, Real Estate Law § 9.3 (4th

---

[8]In its brief, Alba correctly challenges the motion judge's statement in her memorandum that "[a]fter Alba became the absolute owner of the property as a result of its foreclosure by entry, the mortgage debt was discharged." Foreclosure did not discharge the debt unless the value of the property was equal to or greater than the debt, and the record contains no evidence of the property's value at the time of foreclosure. But the judge's statement was at worst an imprecision in drafting, for elsewhere in her memorandum she demonstrated clearly her understanding of the relationship between the mortgage and the debt. In any event, we base our decision on our own view of the law applicable to the summary judgment record. See, e.g., *Grassi Design Group, Inc.* v. *Bank of America, N.A.*, 74 Mass. App. Ct. 456, 461 (2009).

[9]In fact, there may be circumstances in which entry can be made for the purpose of collecting rents *before* any breach of a mortgage condition. See G. L. c. 244, § 9. Where, as here, entry is made after and because of a breach of the mortgage conditions, the entry is presumed to be for the purpose of foreclosure. See *Walker* v. *Thayer*, 113 Mass. 36, 38-39 (1873). Alba acknowledges that entry in this case was made following "default" on the mortgage conditions, and that acknowledgment is confirmed by the certificate itself. Moreover, Alba does not argue that entry was made for any purpose other than foreclosure. Even if it had made such an argument, nothing in the record undercuts the presumption that the entry was made in order to foreclose. See *id.* at 40.

ed. 2004). See *Private Lending & Purchasing, Inc.* v. *First Am. Title Ins. Co.*, 54 Mass. App. Ct. 532, 537 (2002). Indeed, the right to foreclose, by sale, by peaceable entry, or otherwise, arises only if the underlying debt has *not* been paid, see G. L. c. 183, §§ 20, 21; G. L. c. 244, §§ 1, 2, so it would be anomalous, to say the least, for a foreclosure to proceed after a preforeclosure satisfaction of the mortgage debt. And, as explained earlier in our discussion, once a foreclosure after peaceable entry has occurred, the mortgage no longer exists because the mortgagee owns both the legal and equitable title to the land.

*Judgment affirmed.*