NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-597                                          Appeals Court

PHILIP L. GODUTI, trustee,[1]  <u>vs</u>.  CITY OF WORCESTER.


No. 14-P-597.

Suffolk.      January 12, 2015. - May 13, 2015.

Present:  Fecteau, Wolohojian, & Massing, JJ.

<u>Moot Question</u>.  <u>Practice, Civil</u>, Moot case, Summary
judgment.  <u>Real Property</u>, Foreclosure of tax title, Record
title.  <u>Mortgage</u>, Foreclosure.  <u>Municipal Corporations</u>, Tax
title property.  <u>Taxation</u>, Real estate tax:  tax taking.



<u>C</u><u>ivil action</u> commenced in the Land Court Department on
September 29, 2011.

The case was heard by <u>Keith C. Long</u>, J., on motions for
summary judgment.


<u>Michael J. Markoff</u> for the plaintiff.
<u>Karen A. Meyer</u>, Assistant City Solicitor, for the
defendant.


FECTEAU, J.  Philip L. Goduti appeals from the allowance of

summary judgment against him by a judge of the Land Court in his

declaratory judgment action regarding the legality of the city

---

[1] Of the Pension Nominee Trust.

of Worcester's (city) tax assessment for the years 2006 through 2011 on a property located at 2 Gambier Avenue, Worcester (property).  He first contends that the city was not authorized, under G. L. c. 59, § 11, to assess taxes to his mortgagor, who failed to pay the taxes, but was required, instead, to assess taxes during those years only to him, the purported record owner of the property following his foreclosure by entry pursuant to G. L. c. 244, § 1.  Second, Goduti argues that the judge incorrectly determined, especially at the summary judgment stage, that he had waived his foreclosure.  While we need not reach his arguments because this case has become moot, we reject his contentions nevertheless.

1.  Background.  The property in question was first acquired by Sandra and James Dunn, husband and wife, in 1973. In 1989, Goduti became a mortgagee of the property behind two others.[2]  While remaining current on the first two mortgages, the Dunns fell behind on their mortgage payments to Goduti. Utilizing the foreclosure by entry procedure of G. L. c. 244, § 1, Goduti recorded a certificate of entry in the registry of deeds on October 9, 1996, thereby signaling his intent to foreclose.  During the three-year period after Goduti filed his certificate of entry, after which foreclosure would be completed

---

[2] Both mortgages senior to Goduti's were in existence through 2004, when one of the mortgages was discharged.  The other mortgage was discharged in 2011.

and his title would ripen, he accepted regular payments from the Dunns; Goduti disputes that those payments were applied to the mortgage, claiming that they were for use or occupation of the property. When the Dunns divorced in 2004, the property was conveyed, via a quitclaim deed, to Ms. Dunn alone, and the same was recorded in the registry of deeds.

The city had been assessing real estate (and other) taxes to the Dunns but, after the 2004 deed was recorded, it assessed only Ms. Dunn. She stopped paying taxes in the fiscal year 2006 and, as a result, the city issued an instrument of taking in 2007. Ms. Dunn continued to occupy the house until 2011, when she conveyed title to Goduti via a "confirmatory deed," and Goduti then immediately conveyed the property to Michele A. Bouffard,[3] who remains the current owner; Bouffard, in turn, granted Goduti a mortgage. Apparently, as part of the transaction between Goduti and Bouffard, Goduti agreed to pay any tax debt owed to the city for the fiscal years 2006 through 2011.

Procedurally, Goduti (along with Bouffard) initiated this declaratory judgment action in September, 2011, against the city, challenging the validity of the tax assessments from 2006 through 2011. While the instant case was pending, the city

---

[3] There is some inconsistency in the spelling of her name in the record appendix.

filed a complaint (foreclosure complaint) in February, 2012,

seeking to foreclose the right to redemption following its 2007

taking of the property for unpaid taxes for the fiscal year

2006.[4]  The judge, in September, 2012, denied Goduti's motion to

consolidate the two cases, but ordered that they proceed

simultaneously.[5]

In February, 2014, the judge allowed the city's summary

judgment motion in the instant declaratory judgment action filed

by Goduti, determining that Goduti had waived his right to

foreclosure and, therefore, that he was not the owner of the

property from the years 2006 through 2011.  As a result, the

judge determined, the city had validly taxed Ms. Dunn during

those years, based on the 2004 quitclaim deed from Mr. Dunn to

Ms. Dunn.  Concomitantly, and in the related case, the judge

determined that the 2007 tax taking was valid, and ordered that,

if payment of the full tax debt was made within thirty days, the

---

[4] Although the city filed its tax taking in 2007 after Ms. Dunn failed to pay taxes in fiscal year 2006, Ms. Dunn also failed to pay through fiscal year 2011.  Under G. L. c. 60, § 61, the city needed to take the property only once; all subsequent unpaid taxes after fiscal year 2006 were also due under the 2007 taking.

[5] The judge ruled, in part, that "[a]lthough these cases arise from the same underlying factual situation, tax lien and miscellaneous cases have different procedures and remedies that weigh against consolidation.  The court will, however, coordinate the two cases so they proceed simultaneously with events scheduled together and discovery taken in one case fully applicable in the other."

property would be redeemed but, if not, the right to redemption would be foreclosed. Immediately thereafter, in the related case, Goduti stipulated to the amount of the tax debt and paid it in full. In light of Goduti's actions, the city withdrew its foreclosure complaint. Goduti appealed from the final judgment in the instant declaratory judgment action.[6]

2. Mootness. When Goduti paid the tax debt in full and redeemed, and the city discharged its tax lien, there ceased to be a case or controversy between Goduti and the city regarding taxes owed for the fiscal years 2006 through 2011. See, e.g., Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 418-419 (1992) (where plaintiffs challenged entitlement to certain benefits under State program, but program was eliminated during pendency of action, no actual controversy continued to exist). Therefore, this case is moot.[7] We recognize that Goduti may have felt compelled to pay the debt in the related case to avoid foreclosure but, had he intended to preserve his rights in the instant case, there were steps he could have taken to

---

[6] Bouffard did not appeal.

[7] Goduti argues that the action is not moot because, if we were to determine that the judge erred in entering summary judgment, and he were to ultimately prevail below upon remand and further proceedings, the city would presumably credit the amount that he paid for the years 2006 through 2011 toward future taxes owed on the property. This argument ignores the very point it seeks to address: whether this court can and should address the merits of this case in light of the fact that he paid the tax debt at issue.

signify his continuing intent to contest the assessment but avoid foreclosure on the property, including paying the tax debt under protest in the related case, or filing a motion to stay judgment in that case pending the instant appeal. The record shows no such signs, however. Instead, a fair reading of the documents that led to the disposition of the tax lien action is consistent with a global settlement agreement encompassing Goduti's acceptance of the outcome in the instant case. In any event, even if we were to decide the merits of the case, we would be unpersuaded that the summary judgment was decided in error.

3. Merits. "We review a grant of summary judgment de novo to determine 'whether, viewing the evidence in the light most favorable to the nonmoving party, . . . the moving party is entitled to a judgment as a matter of law." Go-Best Assets Ltd. v. Citizens Bank of Mass., 463 Mass. 50, 54 (2012), quoting from Juliano v. Simpson, 461 Mass. 527, 529-530 (2012). See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). Summary judgment is appropriate where there is no genuine issue as to any material fact. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 643 (2002). Issues involving statutory interpretation are questions of law for the court to decide and can appropriately be resolved by summary judgment. See Annese Elec. Servs., Inc. v. Newton, 431 Mass. 763, 764 n.2 (2000).

We first reject Goduti's contention that G. L. c. 59, § 11, requires that a municipality assess taxes only to the record owner. As the court in Boston v. Quincy Mkt. Cold Storage & Warehouse Co., 312 Mass. 638, 644-645 (1942), made clear, the statute allows a municipality to assess taxes to the owner in fact even if he is not the person appearing of record to be the owner of the property at issue. See Springfield v. Schaffer, 12 Mass. App. Ct. 277, 278-279 (1981).

Assuming arguendo that the statute permits a view that restricts the city's assessment of taxes only to the record owner, a view to which we do not subscribe, we discern no error in the city's assessment to Ms. Dunn. Under Massachusetts law, municipalities are only required to exercise "reasonable diligence" in determining "the owner of real estate from records in the county's registry of deeds and registry of probate"; what constitutes reasonable diligence "varies with the circumstances." Lamontagne v. Knightly, 30 Mass. App. Ct. 647, 653 (1991) (quotations omitted). Here, a record search would have revealed the 2004 quitclaim deed from Mr. Dunn to Ms. Dunn. While it also would have revealed Goduti's 1996 certificate of entry, that certificate alone, as further explained, infra, did not in itself signify that Goduti was the record owner. Goduti has cited no case law for the proposition that a mortgagee becomes record owner of a property either when he records a

certificate of entry, or three years after that entry in the absence of further action, and we have found no support for that proposition.

Moreover, the Dunns (and then Ms. Dunn alone) continued to pay the taxes assessed to them long after Goduti recorded the certificate of entry in 1996, and after the three-year holding period passed. Goduti made no attempt over the years to correct what he now asserts was an invalid assessment, and only asserted his instant argument once it became clear that he would be responsible, pursuant to his 2011 agreement with Bouffard, for the tax debt.[8] See Robertson v. Plymouth, 18 Mass. App. Ct. 592, 596-597 (1984) (quotation omitted) (court, when faced with challenge to city's diligence in determining record owner of property, may consider that "validity of the tax title[] is put into question long after the event" by party who could have, but did not, previously complain). Therefore, it cannot be said that the city acted unreasonably in continuing to assess taxes to the Dunns, who occupied the property, had paid and continued to pay the taxes, and appeared of record to be the title owners both before and after the filing of the certificate of entry in 1996.

---

[8] We note also that the record reveals no attempt by Goduti to notify the city of his purported status as owner of record. See G. L. c. 244, § 15A.

Second, and operating under a correct interpretation of G. L. c. 59, § 11, the judge did not err in determining that Goduti was not the owner in fact of the property at issue because his title never ripened after he recorded the certificate of entry in 1996.  By law, Goduti would not have acquired title to the property until three years after recording the certificate of entry.  Santiago v. Alba Mgmt., Inc., 77 Mass. App. Ct. 46, 50 (2010).  See Joyner v. Lenox Savs. Bank, 322 Mass. 46, 52 (1947); Beaton v. Land Ct., 367 Mass. 385, 393 (1975).  During that three-year period, a mortgagee may waive his right to foreclosure by taking acts inconsistent with an intent to foreclose, including by accepting a portion of the mortgage debt or interest thereon.  See Trow v. Berry, 113 Mass. 139, 147 (1873) (evidence showed that "the real relation between the parties was that of debtor and creditor, mortgagor and mortgagee; and cannot be explained consistently with the right of the mortgagee to hold the estate under the foreclosure"); Joyner, supra at 53-54.  That is precisely what happened here.

Specifically, the judge properly determined that there was no genuine dispute of material fact concerning whether Goduti had waived his right to foreclosure by entry during the three-year holding period by accepting payments from Ms. Dunn

and applying them toward the mortgage or interest thereon.[9]
Viewing the motion record in the light most favorable to Goduti,
ample evidence in the record showed that Goduti, during and
after the three-year period in which his title would have
ripened, accepted payments from Ms. Dunn and treated them as
payments toward the mortgage or interest thereon.[10]

Namely, correspondence between attorneys representing the
Dunns (and then Ms. Dunn) and Goduti (as well as Goduti himself,
an attorney) during the three-year holding period indicated a
mutual interest in reaching a settlement for at least a partial
pay-off of the mortgage.  There also was explicit confirmation,
including from Goduti himself, that such an agreement had been
reached.  Letters between the parties after the three-year
period also indicated an ongoing agreement whereby Ms. Dunn
would continue to make payments toward the mortgage in exchange
for Goduti not foreclosing on the property.  Additionally,
Goduti maintained ledgers tracking Ms. Dunn's payments to him,

---

[9] We reject Goduti's argument that whether he waived
foreclosure was an issue that should have been reserved for the
jury.  See Joyner, 322 Mass. at 54 ("there remains the question
whether some intentional act of the bank was as matter of law a
waiver or requires an inference of waiver") (emphasis supplied).

[10] We also take note of a Land Court docket entry on July 8,
2013, that describes a conference with the judge during which
the parties expressed agreement "that these actions should be
decided on summary judgment."

marking the payments as "interest received," thereby also confirming the agreement reached.

Moreover, Goduti's deposition testimony in the instant case indicates that his intent during the three-year window was inconsistent with an intent to foreclose.[11]  We also note that the judge was justified in essentially discounting Goduti's affidavit -- in which he asserted that the payments from Ms. Dunn during the three-year holding period were only for use and occupation of the property -- in the face of the aforementioned documentary evidence and his deposition testimony, given the inconsistencies between them.  See Lyons v. Nutt, 436 Mass. 244, 249 (2002); Phinney v. Morgan, 39 Mass. App. Ct. 202, 207 (1995) (party cannot defeat summary judgment by submitting affidavit that contradicts its previous sworn statements).  For instance, when asked during his deposition whether he remembered initiating a foreclosure action in 1996, Goduti testified, "I don't remember anything about it at all. . . . I just have no present recollection of it."  This contradicts his affidavit statements concerning his specific intent during that time period, and only renders more reliable the aforementioned documentary evidence, which was made contemporaneously to the relevant events in this case.

---

[11] For example, Goduti stated that the house was subject to a superior mortgage, was not worth much, and Ms. Dunn was an "old lady" on whom he was adverse to foreclose.

Finally, and read in context of the documentary evidence, the undisputed facts clearly demonstrate, as matter of law, that Goduti waived his right to foreclosure.  For example, Ms. Dunn continued to occupy the property until 2011, Goduti made no attempt to assert title following the recording of the Dunns' 2004 quitclaim deed, and Ms. Dunn herself conveyed title to Goduti in 2011.

<u>Appeal dismissed</u>.