# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

. OF

## MASSACHUSETTS

---

Isadore Skolnick, administrator, *vs.* East Boston Savings
Bank.

Isadore Skolnick *vs.* Same.

Suffolk.     March 8, 1940. — September 17, 1940.

Present: Field, C.J., Donahue, Lummus, Qua, & Dolan, JJ.

*Landlord and Tenant*, Existence of relation.  *Agency*, What constitutes.
   *Evidence*, Of agency, Relevancy.  *Mortgage*, Of real estate: possession
   by mortgagee, mortgagee as landlord.  *Savings Bank.*

Evidence warranted a finding that one, of whom a savings bank through
   its responsible officers made extensive use as a straw owner and other-
   wise in pursuance of its policy of avoiding foreclosure of defaulted mort-
   gages so far as possible and of avoiding taking title in its own name in
   cases of foreclosure, was its agent in managing a tenement house,
   abandoned by its owner, upon which the bank held an unforeclosed
   mortgage, and in letting a tenement therein; and the bank was under
   a landlord's obligations and liabilities to the tenant.
On the issue whether one in letting a tenement to a tenant later injured
   through a defect therein was acting as agent of a mortgagee of the
   property, evidence of the alleged agent's dealings with other property
   similarly mortgaged, both before and after the letting and injury in
   question, was relevant.
A savings bank, without foreclosure of a mortgage held by it or formal
   entry to foreclose, is not prevented by statute from assuming sufficient
   possession and control of the mortgaged property to stand in the posi-
   tion of a landlord to the tenants of the property.

Two ACTIONS OF TORT, the first originally by Sarah Skolnick and after her death prosecuted by the administrator of her estate. Writs in the Superior Court dated October 8, 1937 and January 7, 1938, respectively.

There were findings for the plaintiffs in the sums of $20,000 and $4,388.44, respectively, by *Walsh*, J. The defendant alleged exceptions.

*W. F. Porter*, (*J. J. Butler* with him,) for the defendant.

*M. H. Goldman*, (*G. S. Harvey & S. Fishman* with him,) for the plaintiffs.

LUMMUS, J. These actions, the first for personal injury sustained by the plaintiff's intestate Sarah Skolnick, and the second for consequential damages sustained by her husband, result from the fall of Sarah Skolnick from the rear veranda of the third floor apartment at 10 Beach Road in Winthrop on July 30, 1937. Sarah Skolnick hired that apartment from Myer Swartz in March, 1937, paying $26 a month as rent. As part of the consideration for the hiring, Swartz promised to repair the railing, which was loose and unsafe, that ran around the veranda. In June he sent a carpenter, who nailed the railing to the house. The fall happened while Sarah Skolnick was pouring water from the veranda into the yard below, and in so doing came into contact with the railing, which gave way. An auditor, to whom the case was referred and whose findings were not to be final, found that the repair to the railing was negligently made, and that negligence in the repair was the cause of the fall. That finding warranted a finding of liability against Swartz, if he was landlord, or against the landlord for whom Swartz was acting as the duly authorized agent. *Cleary* v. *Union Realty Co.* 300 Mass. 312. *Bailey* v. *First Realty Co.* 305 Mass. 306. The main question is, whether the evidence warranted a finding that Swartz was the agent of the defendant in dealing with Sarah Skolnick. We think it did. Various questions of practice have been raised by the plaintiff, but we find it unnecessary to deal with them, in view of the result to which we have come on the merits.

If the defendant through Swartz let the tenement to

Sarah Skolnick, it is immaterial that the defendant had no title except by way of mortgage. The act of the defendant in letting the property was an assumption of control, and created the relation of landlord and tenant and the duties attendant upon that relation. *Lindsey* v. *Leighton,* 150 Mass. 285. *Curry* v. *Dorr,* 210 Mass. 430. *Connery* v. *Cass,* 277 Mass. 545. *Backoff* v. *Weiner,* 305 Mass. 375, 377.

The auditor's report was evidence of the following facts. The defendant was not the owner of record of the tenement house in question at the time of the injury. But the defendant had previously held title to it as foreclosed property. The house had then been conveyed by the defendant to Oscar Kessler on November 28, 1934, and Kessler had given the defendant a mortgage for the whole purchase price. Kessler conveyed the house to Liberty Realty Trust, J. Kessler, Trustee, on February 1, 1936, and at the time of the injury the title stood of record in the name of that trust. But about September, 1936, that trust ceased to concern itself about the house. Thereafter Myer Swartz managed the house and collected the rents. On some occasions he purported to act for Meridian Realty Trust, of which he was manager and had full control.

The mortgage on the house in question is one of more than twenty-four hundred mortgage loans held by the defendant. Before the business depression, which began in 1929, foreclosures were rare. Since 1935 the defendant and other savings banks have had many defaults in the payment of interest, taxes and insurance. Foreclosures began to be numerous in 1936. Real estate could not be sold for the amounts that the defendant had lawfully lent upon it. Other savings banks had the same experience. If the defendant should buy at a foreclosure sale, it could not sell for enough to discharge the loan, and the list of foreclosed property shown in its annual report would be enlarged. A large volume of such property would impair the public standing of the defendant. Moreover, the law requires that foreclosed property be sold within five years, unless the commissioner of banks should extend the time. G. L. (Ter. Ed.) c. 168, § 54, Twelfth. St. 1937, c. 274, § 2.

The defendant adopted a policy of avoiding foreclosure whenever possible, by requiring mortgagors to bring in to the defendant the entire income as a suspense account and by using the income to pay the current expenses of the property, and interest and principal on the mortgages so far as possible. In that way foreclosure was avoided. Where foreclosure had taken place, the defendant found some irresponsible person to take a deed and to give back a new mortgage for as much as the value of the property, and repeated the process when he in turn defaulted. Thus the defendant avoided carrying title to the property in its own name for any considerable time.

In carrying out this policy of avoiding taking title, the defendant made use of a real estate broker named Myer Swartz, and the Meridian Realty Trust which he managed and controlled, though his daughter Bertha Swartz was nominally trustee and one Bessie Fisher was nominally beneficiary. The defendant made no distinction between Swartz and the trust. Often Swartz took deeds of foreclosed property in the name of the trust, and caused mortgages to be given back to the defendant for the whole purchase price. In other instances Swartz or the trust took charge of property on which the defendant held a mortgage, without the formality of a transfer of title. What was done was with the full knowledge of the responsible officers of the defendant. The trust, when it took title, was a nominal, not a real, purchaser. At several times in 1937 and 1938 the board of investment of the defendant voted, first to reduce to three per cent, and later to cancel, all unpaid or future interest on mortgages on properties owned by the trust. Separate accounts as to each property managed by Swartz were not kept by the defendant. The defendant audited the receipts and disbursements on all the properties managed by Swartz or the trust, and allowed Swartz or the trust a commission of six per cent on the receipts. The defendant paid for liability insurance on the property in question and other properties managed by Swartz or the trust. On February 11, 1937, Swartz paid the defendant out of the rents collected from the Kessler

properties, apparently including the property in question, the sum of $1,000. When the Skolnicks moved out on September 30, 1937, the treasurer of the defendant accepted the keys from them.

No evidence other than the auditor's report was introduced. The foregoing facts warrant the conclusion of the auditor that Swartz acted as the authorized agent of the defendant in managing, renting and repairing the property in question, in renting a tenement to Sarah Skolnick with an agreement to repair the railing, and in making the repairs. In letting the tenement to her, and in promising to make repairs, Swartz purported to act for the defendant. The relations of Swartz with the defendant were so extensive in time and volume that it is unbelievable that they were not known to and approved by the officers having the power to bind the defendant. *Nims* v. *Mt. Hermon Boys' School*, 160 Mass. 177. *Lonergan* v. *Highland Trust Co.* 287 Mass. 550, 557. The foregoing facts warrant the conclusion of the auditor, and of the judge sitting without jury, that the defendant is liable to the plaintiff.

G. L. (Ter. Ed.) c. 221, § 56, provides in part: ". . . the court at the trial shall exclude any finding of fact which appears in the report to be based upon an erroneous opinion of law, or upon inadmissible evidence. Whenever the auditor makes a ruling as to the admissibility of evidence and objection is taken thereto he shall, if requested so to do, make a statement of such ruling in his report." The defendant objected *en bloc* to a mass of evidence, comprising nearly thirty-two printed pages of the record, admitted to show the agency of Swartz for the defendant. The points argued by the defendant as to this evidence raise questions of substantive law rather than of the law of evidence. The substance of the argument is, that the circumstances admitted in evidence, even if true, do not tend to prove agency on the part of Swartz. But we think that they do. The dealings of Swartz with the defendant, and with tenants on behalf of the defendant, as to mortgaged property other than that in question, were proper for consideration. What Swartz did after the injury as well as what he

did before might throw light upon his relation to the defendant at the time of the injury and at the time of the letting. *Conroy* v. *Fall River Herald News Publishing Co.* 306 Mass. 488, 493.

This is not a case where a mortgagee, rather than enter and assume the possession and control of mortgaged property, fails to foreclose a mortgage that seems in excess of the value of the security, and permits the mortgagor to exercise a precarious possession and control of the property, meanwhile taking steps to see that the income is not diverted from the payment of fixed charges and interest. Here the mortgagor had abandoned the property. Swartz was either an intruder without right, or the representative of the defendant.

We find nothing in the statutes governing savings banks that would deprive such a bank of the power, incident to the ordinary Massachusetts mortgage (*Newall* v. *Wright*, 3 Mass. 138, 152; *Mayo* v. *Fletcher*, 14 Pick. 525; *Wales* v. *Mellen*, 1 Gray, 512; *Smith* v. *Johns*, 3 Gray, 517, 519; *Montuori* v. *Bailen*, 290 Mass. 72, 74; G. L. [Ter. Ed.] c. 183, § 26), to assume possession and control of the mortgaged property through an agent, without making a formal entry to foreclose the mortgage. An entry into possession that is ineffective to foreclose a mortgage may nevertheless give the mortgagee possession of the property and a right to the rents. *Lamson & Co. (Inc.)* v. *Abrams*, 305 Mass. 238, 242, and cases cited. See, generally, *Schleifer* v. *Worcester North Savings Institution*, 306 Mass. 226.

The requests for rulings presented by the defendant require no further discussion.

*Exceptions overruled.*