EDNA NEGRON & others *vs.* EDWARD E. GORDON, trustee, & another.

Suffolk.    February 9, 1977. — August 12, 1977.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Housing. Mortgage,* Of real estate: mortgagee as owner. *Statute,* Construction.  *Landlord and Tenant,* State sanitary code.

Discussion of the provisions of G. L. c. 111, §§ 127A-127N. [202-205]
A mortgagee of property is not a person who has "authority to decide whether to rehabilitate, or sell or otherwise dispose of the premises" within the meaning of G. L. c. 111, § 127N. [206-207]

CIVIL ACTION commenced in the Housing Court of the City of Boston on December 4, 1975.

The case was heard by *Garrity,* J., on a motion to dismiss.

The Supreme Judicial Court granted a request for direct appellate review.

*Bruce E. Mohl* (*Hollis Young* with him) for the plaintiffs.

*Kenneth D. Kerr* for the South Boston Savings Bank.

ABRAMS, J.    The plaintiffs, tenants of Edward E. Gordon (Gordon), trustee of the King Realty Trust (King), brought an action against their landlord pursuant to G. L. c. 111, § 127H, and G. L. c. 186, § 14, in the Housing Court of the City of Boston. On or about December 4, 1975, and again on December 17, 1975, the judge, having found violations of the State Sanitary Code,[1] ordered the defendant to provide heat and hot water to the premises of the plaintiffs.

---

[1] See State Sanitary Code, art. II, Minimum Standards of Fitness for Human Habitation, Regs. 1-18. These regulations were promulgated pursuant to G. L. c. 111, § 127A.

On January 8, 1976, contempt proceedings were initiated against Gordon for failure to abide by the terms of the order. Gordon was adjudged to be in contempt and was again ordered to restore the heat and hot water.

On February 25, 1976, plaintiffs' motion to join South Boston Savings Bank (bank) as a party defendant and their motion to amend their complaint were both allowed. By their amendment, relying on G. L. c. 111, § 127N, the plaintiffs sought an order requiring the bank to remedy the defective conditions existing in the premises.

On March 24, 1976, the defendant bank filed a motion to dismiss, and, on May 5, 1976, the action was dismissed as against the bank. On June 10, 1976, the bank was enjoined from voluntarily transferring, assigning or conveying its mortgage interest pending our disposition of this appeal. The plaintiffs were granted leave to appeal in forma pauperis.

Final judgment dismissing the action as to the bank was entered on August 17, 1976, and the plaintiffs thereafter duly noted their appeal.[2] We granted the plaintiffs' application for direct appellate review.

In ruling on the motion to dismiss, the judge found as fact certain of the pertinent allegations in the plaintiffs' amended and supplemental complaint. We summarize the facts from the pleadings and the conclusions of the judge. The plaintiffs were tenants in the premises located at 911 Blue Hill Avenue, Dorchester. The defendant Gordon owned the property as trustee for King subject to a first mortgage held by the bank. The mortgage was on the statutory condition, G. L. c. 183, § 20, and, in the event of a breach of condition, the mortgagee had the statutory power of sale, G. L. c. 183, § 21. The defendant Gordon had failed to rectify sanitary code violations. The judge concluded that Gordon was, in all probability, financially unable to rectify the situation. Although Gordon had vio-

---

[2] As required by Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), the Housing Court (1) expressly ordered the entry of final judgment as to the defendant bank, and (2) certified that there was "no just reason for delay" in appellate consideration of the issues herein presented.

lated the mortgage's statutory condition, the bank had not
entered into possession of the premises pursuant to G. L.
c. 183, § 21. The bank neither made entry to foreclose the
mortgage under G. L. c. 244, § 1, nor had it commenced
foreclosure proceedings under the power of sale as autho-
rized by G. L. c. 244, § 14. After making these findings,
the judge determined that the bank did not fall within the
ambit of G. L. c. 111, § 127N.

The question presented by this appeal is whether the
defendant bank, as holder of a first mortgage is a corpora-
tion or other person which "has the authority to decide
whether to rehabilitate, or sell or otherwise dispose of the
premises" within the meaning of G. L. c. 111, § 127N.[3] We
believe that mortgagees are not within the scope of § 127N.
Therefore, we affirm the judgment of the Housing Court.

"When the meaning of any particular section or clause
of a statute is questioned, it is proper, no doubt, to look
into the other parts of the statute: otherwise the different
sections of the same statute might be so construed as to
be repugnant, and the intention of the legislature might
be defeated. And if upon examination the general meaning
and object of the statute should be found inconsistent with
the literal import of any particular clause or section, such
clause or section must, if possible, be construed according

---

[3] The full text of G. L. c. 111, § 127N, inserted by St. 1974, c. 681, is
as follows: "In actions brought under this chapter against owners of
residential premises a tenant may, prior to a hearing on the merits,
move to join the following persons as parties: any individual, trust or
corporation, partnership, association or other person who, acting alone
or with another, has the authority to decide whether to rehabilitate, or
sell or otherwise dispose of the premises, with or without record title
or recorded interest. Such person shall not be joined, however, if its
decision-making authority is derived solely from its position as a fidu-
ciary if such person has never personally had any financial or pos-
sessory interest in the premises.

"If the court finds that the owner may be unable for financial rea-
sons or otherwise to perform any act or pay any liability that may be
ordered if judgment is entered for the tenant, the court shall allow the
motion joining any such person. The owner and any person so joined
shall be jointly and severally liable for taking any action or paying any
damages ordered by the court; provided, however, that the provisions
of this section regarding the liability of persons other than owners shall
not apply to two and three family owner-occupied residential premises."

to the spirit of the act." *Holbrook* v. *Holbrook*, 1 Pick. 248, 250 (1823). We look, therefore, to the entire statute to determine whether or not mortgagees are within the purview of G. L. c. 111, § 127N.

General Laws c. 111, §§ 127A-127N, reflect a comprehensive legislative attempt to effectuate compliance with minimum health and safety standards for residential premises. Section 127N of that chapter, inserted by St. 1974, c. 681, does not purport to create new causes of action. Instead, it authorizes the joinder of certain parties "[i]n actions brought under this chapter against owners of residential premises." The statute must therefore be construed in a manner consonant with the sections of c. 111 which create causes of action against owners.

Section 127B empowers the board of health to issue a written order to the owner of housing directing him to rectify conditions which render the premises unfit for human habitation. If the owner fails to comply with such order, the board of health may institute enforcement proceedings in the Superior Court. Further noncompliance may eventuate in the demolition of the building. This section of the statute requires that a copy of the board of health's order be sent to the mortgagee. In the event of resort to the Superior Court, it is further required that the mortgagee receive notice of the court proceedings.

Section 127C authorizes a petition to a District Court by an aggrieved tenant or by a board of health to remedy violations of the sanitary code. Section 127D provides that an order of notice issue to the owner of the premises, and requires the owner to file an answer; the answer must include the names of the mortgagees or lienors. If a District Court judge finds that the facts are as alleged in the petition, he may order that *rental* payments (but not mortgage payments) be deposited with the clerk of the court so that the court may make disbursements to alleviate the unsanitary conditions. G. L. c. 111, § 127F. Section 127F also requires that a copy of any court order be sent to the mortgagees and lienors.

Section 127H authorizes suit in the Superior Court by a tenant who resides in premises where there exist conditions which violate standards of fitness for human habitation. On the filing of such a petition, process is to issue and be served on the owner. Again, mortgagees must be given notice of the pendency of the petition and the date of the scheduled hearing. There is no requirement that process issue or be served on the mortgagees. If the factual allegations are substantiated, several remedies are available, including the appointment of a receiver. G. L. c. 111, § 127H (d). A mortgagee is entitled to a copy of any order, finding, or decree made by a Superior Court judge. In the event that a receiver is appointed, the receiver is to apply rents to bring the housing up to minimum standards, G. L. c. 111, § 127I. If such funds are insufficient to complete the task, the receiver is authorized by G. L. c. 111, § 127J, to apply for financial assistance from the Commonwealth. If the receiver intends to pursue this course of action, a hearing is mandated. Mortgagees must be notified of the time and place of the hearing. If funds are expended pursuant to § 127J, such financial assistance is the debt of the owner. The receiver has no authority to look to the mortgagee for financial assistance.

Our examination of the statutory scheme leads us to conclude that the Legislature was aware of mortgagees and their unique interest in substandard housing. We therefore think it significant that § 127N omits any explicit reference to mortgagees. Such an omission casts substantial doubt on the plaintiffs' assertion that the Legislature contemplated the inclusion of mortgagees in the statutory term "any individual, trust or corporation, partnership, association or other person." We believe that, had the Legislature meant to bring mortgagees within the purview of § 127N, it would have done so by specific reference to them.

Further, if the Legislature, by passage of § 127N, had made mortgagees parties to actions under the various sections, it would have amended those preceding sections to allow for mortgagees to participate as defendants in the

same manner as the owners of such premises. This it has not done. Moreover, if § 127N were intended to make mortgagees parties to those actions, such persons would be entitled to more than mere notice of the time and place of hearings or copies of court orders. The notice requirement is merely a legislative recognition of the mortgagee's unique interest in the property. It is not the equivalent of service of process; it is not the exercise of the court's jurisdiction over the mortgagee.

Further, had mortgagees been included in § 127N, then most certainly the Legislature would have amended § 127J to permit the receiver to look to the mortgagees for financial assistance to correct unsanitary conditions. This it has not done.

Additionally, we do not believe that the words of the statute lend themselves to the construction urged by the plaintiffs. We arrive at this conclusion by again scrutinizing the language of § 127N, this time in light of basic principles of the law of mortgages.

Prior to breach of the statutory condition, see G. L. c. 183, § 20, the mortgagee holds bare legal title to the property subject to defeasance on the mortgagor's performance of the obligation secured by the mortgage. *Perry* v. *Miller,* 330 Mass. 261 (1953). *Pineo* v. *White,* 320 Mass. 487 (1946). It is only for the purpose of securing the debt that the mortgagee is to be considered owner of the property. *Boston* v. *Quincy Mkt. Cold Storage & Warehouse Co.,* 312 Mass. 638, 649 (1942). *Krikorian* v. *Grafton Co-op. Bank,* 312 Mass. 272, 274 (1942). "[A]ll the statutes upon the subject [i.e., mortgages] are to be so construed; and all rules of law, whether administered in law, or in equity, are to be so applied, as to carry these objects into effect." *Ewer* v. *Hobbs,* 5 Met. 1, 3 (1842).

Chapter 111, § 127N, seeks to bring within its purview those persons who have the authority to decide whether "to rehabilitate" or to "sell" or to "otherwise dispose of the premises." We think it most relevant that the statute speaks in terms of "authority to decide" rather than "authority ... to rehabilitate, or sell or otherwise dispose of the premises." The mortgagee undisputably has the au-

thority to sell its bare legal title to the premises by assigning the mortgage and the obligation secured thereby. See, e.g., *Ruggles* v. *Barton,* 13 Gray 506 (1859). However, the words "authority to decide" connote the power to make a conscious choice between conflicting alternatives, and, although the mortgagee has the power to assign its mortgage interest (G. L. c. 183, § 28), the right to rehabilitate the property belongs to the mortgagor. See *Krikorian* v. *Grafton Co-op Bank, supra.* Therefore, the mortgagee has no "authority to decide whether to rehabilitate, or sell or otherwise dispose of the premises." To adopt the construction urged by the plaintiffs is to render the words "to decide" mere surplusage, and thus to offend one of the most basic axioms of statutory interpretation. *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.,* 352 Mass. 617 (1967). *Bolster* v. *Commissioner of Corps. & Taxation,* 319 Mass. 81 (1946).

The plaintiffs argue that we must decide this issue in light of the factual record; that is, we should be mindful that in this case there has been a breach of the statutory condition in that the mortgagor did not make the required mortgage payments. The plaintiffs assert that the breach of condition by the mortgagor is the triggering event which brings § 127N to bear on mortgagees — even those not in possession. The plaintiffs' position is not, however, significantly enhanced if the terms of § 127N are construed in light of that occurrence.

The mortgagee is not bound to act when the mortgagor violates the statutory condition. If the mortgagee does decide to take action to foreclose, several alternatives are open.[4] In most instances, the mortgagee will choose between the two most often utilized remedies: it makes the required entry under G. L. c. 244, § 1, or it initiates the

---

[4] There are four methods of foreclosure: (1) peaceable entry (which must continue for three years) and recording a certificate thereof, G. L. c. 244, §§ 1, 2; (2) sale under a statutory power of sale provided for in the terms of the mortgage, G. L. c. 244, §§ 11-15, 17; (3) foreclosure by action, G. L. c. 244, §§ 4-10; and (4) bill in equity, G. L. c. 185, § 1 (*k*). The third method is seldom used and the fourth is available only in extraordinary circumstances.

foreclosure proceeding by exercise of the power of sale under G. L. c. 244, §§ 11-15, 17. Under the first method, the mortgagee's possession must continue for three years if foreclosure is to be achieved, *Willard* v. *Kimball,* 277 Mass. 350, 358 (1931); pursuant to the latter approach, successful foreclosure requires that the sale be duly publicized, the mortgagor properly notified, and the sale conducted in accordance with the provisions of the relevant statutes.[5] *Outpost Cafe, Inc.* v. *Fairhaven Sav. Bank,* 3 Mass. App. Ct. 1 (1975).

Neither the breach of the statutory condition nor a lapse of time subsequent thereto alters the rights of the parties in relation to the property. M.E. Park & D.D. Park, Conveyancing § 351 (1968). *Goodwin* v. *Richardson,* 11 Mass. 469, 472 (1814). So long as it remains in possession, the mortgagor is regarded as the real owner, *Way* v. *Mullett,* 143 Mass. 49 (1886), and it retains all incidents of ownership, not only as to all the world, but as to the mortgagee as well. *Aragona* v. *Parrella,* 325 Mass. 583 (1950). One of these incidents is the right — and the duty — to make repairs. Even where the mortgagee possesses a statutory right of sale, the right to rehabilitate the property inures to the mortgagor until a sale complying with the statutory requirements is effectuated. Thus, at the precise moment of the mortgagor's violation of the terms of the mortgage, the mortgagee does not have authority to choose between sale, rehabilitation, or other disposition of the property.[6]

---

[5] In a foreclosure by action, see note 4 *supra,* foreclosure is not achieved unless possession continues three years beyond the date of conditional judgment.

[6] In the instant case the mortgagee had not exercised the right to enter the premises on the mortgagor's breach of the statutory condition. As the defendant bank concedes, such an occurrence would have altered significantly the rights of the parties. An entry into possession, even where ineffective to foreclose a mortgage, may nevertheless give the mortgagee possession of the property, as well as the right to collect rents and the duty to make necessary repairs. *Skolnick* v. *East Boston Sav. Bank,* 307 Mass. 1, 6 (1940). *Fletcher* v. *Bass River Sav. Bank,* 182 Mass. 5, 7 (1902). We are not here confronted with a mortgagee in possession. Accordingly, we do not interpret the statute in light of that event.

As we have previously stated, "the Legislature in this section was providing against the possibility that the owners of private rental property might realize personal financial gain while at the same time screening themselves from responsibility for the repair of defective housing." *Perez* v. *Boston Hous. Auth.*, 368 Mass. 333, 340, appeal dismissed, 423 U.S. 1009 (1975). The legislation enabled aggrieved tenants to reach persons having the real interest in the property and the financial capability to remedy housing and sanitary code violations.

A mortgagee cannot properly be characterized as a conduit or straw to shield the real owner. Nor can it be said that a mortgagee benefits financially from the perpetuation of defective conditions in the premises. Indeed, as the plaintiffs state in their brief, a failure to cure housing code violations is detrimental to the interest of the mortgagee as it diminishes the value of the security. For all of the foregoing reasons, we conclude that mortgagees are not within the purview of § 127N.[7]

Both parties are in agreement that the goal of the Legislature is the maintenance of residential housing in accordance with minimum sanitary standards. The parties advance strong public policy arguments in support of their respective positions. While the plaintiffs urge that adherence to the view which they express will result ultimately in a general upgrading of residential premises, the defendant bank argues that inclusion of mortgagees in the scope of § 127N will lead to severe shrinkage in the housing market, a consequence which will, of course, be detrimental to the plaintiffs and to those similarly situated. The apparent policy considerations on each side of the conflict are very strong, and very compelling. In our view, the Legislature is the appropriate forum for the resolution of this dispute. "In the keeping of legislatures perhaps more than any other group is the well-being of their fellow-men."

---

[7] On the view we take of the statute, we need not decide whether the Legislature could make § 127N applicable to mortgages existing before its effective date.

Whitney *v.* Worcester.

Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 546 (1947).

Accordingly, the judgment of the Housing Court is affirmed.

*So ordered.*