Toomey, J.
INTRODUCTION
Plaintiffs, Dominic Leone (“Leone”) and Mercedes, Inc. (“Mercedes”), have brought suit against defendants, Fleet National Bank (“Fleet”), Paula Ruggiero and Joseph Ruggiero (“the Ruggieros”). The suit alleges that Fleet acted contrary to law in its dealings with certain property, owned variously by Leone and Mercedes and pledged as security for a debt owed by Leone to Fleet. Leone and Mercedes, which had obtained the property subject to Fleet’s interest, seek, by their suit, to set aside a foreclosure sale from Fleet, to Ruggiero and to obtain damages, costs and fees from Fleet due to Fleet’s alleged breaches of law and unfair and deceptive practices. Fleet has counterclaimed, demanding that Leone pay the balance due on the note held by Fleet.
The parties agreed that the matter would be tried jury-waived and trial was had in the Taunton Superior Court on July 21, 1999.[1] Evidence adduced at the trial has led this Court to the following conclusions.
FINDINGS OF FACT
1. On September 29, 1988, Leone executed a promissory note in favor of Fleet’s predecessor in the principal amount of $800,000.00. He secured the note with a mortgage upon the real property, a restaurant, now at issue (the “Davol Street Property”).
2. On October 10, 1991, Leone conveyed the Davol Street property to Mercedes subject to the mortgage. Leone was the president of Mercedes and his wife was a corporate officer.
3. On April 26 and June 26, 1996, Fleet notified Leone that the note was • in default and demanded payment in full. Payment was not made. Thereafter, Fleet’s notices of intent to foreclose, to hold Leone liable for any deficiency and to sell the mortgaged promises were appropriately served and published. The notices recited that the foreclosure sale date would be on or after September 11, 1996.
4. In early September, 1996, Mercedes sought Chapter 11 relief in Bankruptcy Court. A stay of the September 11, 1996 foreclosure sale by Fleet was thereby effected.
5. On December 3, 1996, the stay by reason of bankruptcy was lifted in order to permit Fleet to proceed with the foreclosure process.
6. On December 12, 1996, Mercedes converted its §11 bankruptcy (restructuring) to a §7 bankruptcy (liquidation), apparently attempting thereby to impede the foreclosure by vesting control of the premises in the bankruptcy Trustee.
7. Also on December 12, 1996, Leone met with Mercedes’ bankruptcy Trustee at the Davol Street property. The Trustee informed Leone that, because Mercedes was without funds, the corporation was unable to continue paying for a generator (which had been leased by Leone on behalf of Mercedes when the local power company terminated service due to nonpayment by Mercedes). Leone advised the Trustee that shutting down the generator would cause spoilage of the food stored at the restaurant and would expose the restaurant to the risk of bursting pipes. The Trustee cancelled the lease for the generator and returned it to the lessors. Leone did not request either his wife, who held a mortgage junior to Fleet’s, or other junior mortgagees and creditors to assume financial responsibility for the generator.
8. In an attempt to avoid the impending foreclosure, Mercedes, on December 13, 1996, moved the Bankruptcy Court to reinstate the stay. The motion was set down for hearing on January 9, 1997.
9. On December 19, 1996 and December 20, 1996, the Trustee and Fleet exchanged correspondence. The Trustee informed Fleet of the physical risks to the restaurant, noted Mercedes’ inability to fund maintenance precautions, and suggested that Fleet might wish to “take measures to protect its collateral.” Fleet responded that, insofar as it had not entered into possession, dominion and control of the premises and because of the pending motion to reinstate the stay of foreclosure,[2] it was not obliged “to maintain or repair the property.” Fleet did acknowledge its interest in “maintain!ing] the collateral,” but did not commit so to do. Fleet also suggested to the Trustee that junior creditors, who were more vulnerable than Fleet, might *734 wish to protect their interests by “protective disbursements” to safeguard the premises.
10. Sometime after December 26, 1996, the premises sustained substantial damage caused by burst water pipes. The pipes had become frozen due to the cold weather and the absence of power in the building necessary to create heat and protect the pipes. Leone was informed of the damage by the local fire department and, in turn, notified the Trustee.
11. On December 30, 1996, Fleet issued notice of its intent to proceed with the foreclosure sale on January 15, 1997.
12. On January 9, 1997, Mercedes’ motion to reinstate the stay was denied by the Bankruptcy Court.
13. On January 15, 1997, Fleet entered and took possession of the premises for the purposes of conducting the foreclosure sale. Those interested in bidding were allowed to inspect the property, which was in considerable distress, no restorations having been effected after the pipe burst and consequent damage ensued. The auction sale proceeded and the high bidders, at $505,000, were the Ruggieros. Their bid was accepted by Fleet.
14. Fleet applied the proceeds of the sale to the debt owed it by Leone and a deficiency on the debt resulted as follows:
a. principal owed $208,121.03
b. interest owed $5,479.00 (as of July 19, 1999)
c. accruing interest to be determined, from July 19, 1999 (at $60.70197 per day)
15. On March 5, 1997, a deed to the premises, reciting the conveyance from Fleet to the Ruggieros, was executed and recorded.
DISCUSSION
Leone argues that Fleet had an obligation to maintain the Davol Street property, by continuing to make payments for the generator which provided electricity to heat that property, before Fleet foreclosed thereon and while the Davol Street property was subject to bankruptcy proceedings. Fleet, on the other hand, contends that it had no such obligation because it was not in possession of the Davol Street property at the time the Bankruptcy Trustee cancelled the lease for the generator. Fleet has the better of the dispute.
The duty to maintain the Davol Street Property rested with Mercedes, Inc. until Fleet either took possession or foreclosed upon the property. See Negron v. Gordon, 373 Mass. 199, 206 (1977). In Negron, the Supreme Judicial Court held that:
So long as it remains in possession, the mortgagor is regarded as the real owner, Way v. Mullett, 143 Mass. 49 (1886), and it retains all incidents of ownership, not only as to all the world, but as to the mortgagee as well. Aragona v. Parrella, 325 Mass. 583 (1950). One of these incidents is the right — and the duty — to make repairs. Even where the mortgagee possesses a statutory right of sale, the right to rehabilitate the property inures to the mortgagor until a sale complying with the statutory requirements is effectuated ... A mortgagee cannot properly be characterized as a conduit or straw to shield the real owner. Nor can it be said that a mortgagee benefits financially from the perpetuation of defective conditions in the premises.
Negron, supra, at 206-07. Similarly, the Appeals Court, in Blackstone Valley National Bank v. Hanson, 15 Mass.App.Ct. 901 (1983), held that insufficient evidence existed to support a finding that a mortgagee bank was in possession of the mortgagor’s property where the mortgagee-bank did not occupy or exercise control over the mortgagor’s property.
In the case at bar, Fleet did not effectuate a foreclosure in accordance with G.L.c. 244 at the time the Bankruptcy Trustee cancelled the lease of the generator located at the Davol Street Property. In fact, Fleet could not have foreclosed on the Davol Street Property at that time because any foreclosure was stayed by Leone’s filing of a bankruptcy petition. Furthermore, Fleet did not occupy or exercise control over the Davol Street Property at the time the Bankruptcy Trustee cancelled the lease of the generator located at the Davol Street Property. At that time, the Bankruptcy Trustee, not Fleet, had possession of the Davol Street Property.
Consequently, Fleet had no obligation to maintain the lease of the generator beyond December 12, 1996, the date on which the Bankruptcy Trustee cancelled the generator’s lease, or otherwise to protect the property from a diminution in value. Fleet’s obligation, if any, arose on January 15, 1997, the date on which Fleet entered and took possession of the premises for the purpose of conducting the foreclosure sale. At that time, however, the pipes had already burst and the damage been effected.
Next, Leone claims that Fleet had a duty to postpone the foreclosure sale once it discovered the damage from the burst pipes. Leone, however, cites no law to support his contention. This Court finds that Fleet’s only duty was one of fair dealing with the premises and, in the circumstances at bar, that duty was not violated.
The Appeals Court has observed that, “If the statutory norms found in G.L.c. 244, §§11-17B, governing foreclosure of real estate mortgages, have been adhered to, Massachusetts cases have generally regarded that as satisfying the fiduciary duty of a mortgagee to deal fairly with the mortgaged property, unless the mortgagee’s conduct manifested fraud, bad faith, or the absence of reasonable diligence in the foreclosure sale process.” Pemstein v. Stimpson, 36 Mass.App.Ct. 283, 286-87 (1994) (citations omitted). Although a mortgagee, has a right to postpone the mortgage sale, it has no obligation to do so. Seppala *735 & Aho Construction Co., Inc. v. Petersen, 373 Mass. 316, 325 (1977). Fleet, as mortgagee, satisfied its duty to act in good faith and use reasonable diligence to protect Leone’s interest with respect to the Davol Street Property because it complied with the statutory provisions governing the foreclosure of real estate mortgages. (See evidentiary stipulation, exhibit 1.) Fleet’s omission to postpone the foreclosure is not actionable because it had no duty to postpone.
CONCLUSION
Fleet having violated no obligation to Leone or Mercedes by its omission, pre-possession, to provide maintenance or by its forbearance, post-possession, to postpone the auction until restorative measures, by someone, had occurred, judgment will enter for defendants on all counts of plaintiffs’ Complaint. With respect to the counterclaim, Fleet is entitled to the deficiency on the principal amount, accrued and accruing in interest, costs and attorneys’ fees as provided by the loan agreement. Judgment shall enter on the counterclaim for plaintiff-in-counterclaim in an amount to be agreed by the parties or, if necessary, as ordered by this Court.

 The parties were granted until August 13, 1999, to file post-trial memoranda.

 A reinstatement of the stay would likely delay resolution of the question of ownership of the property and further frustrate Fleet's efforts to obtain recovery of its loan to Leone.