Graham, J.
This case arises from a dispute over the denial of an application for variances relating to proposed construction on property located in Barnstable, Massachusetts. On May 22, 2000, the plaintiffs, Christopher P. Kuhn and Laurie A. Warren filed a complaint: 1) challenging the defendants’ denial of their applications for waivers and variances from regulatory requirements relating to land development (Counts I & II); 2) seeking declaratory judgment that their applications were constructively approved because the defendants failed to issue a written decision within proscribed time limits (Counts III & IV); 3) seeking declaratory judgment that a June 7, 1989 Board of Health letter purporting to impose conditions on the approval of the variances is invalid (Count V); 4) seeking declaratory judgment that current setback regulations are not applicable to the plaintiffs’ application because they have been altered and the Board of Health has not adequately justified the more stringent regulations (Count VI); and 5) asserting that the Board’s actions constituted an unlawful regulatory taking for which the Board members are individually liable (Count VII).
The defendants, members of the Barnstable Board of Health, now move to dismiss all seven counts of the plaintiffs’ complaint pursuant to Mass.R.Civ.P. 12(b)(1) on the grounds that the plaintiffs lack standing. The defendants also move under Mass.R.Civ.P. 12(b)(6) to dismiss Counts III, IV and VI on the grounds that the Board of Health’s decision is not subject to the time requirements set forth in Title V and to dismiss Counts I, II and V on the grounds that they constitute an appeal from the Planning Board’s conditions of approval and are, therefore, untimely. Defendants also contend that the plaintiffs fail to state a claim for which relief can be granted as to his claim alleging an administrative taking (Count VII) because they have failed to allege that there is no economically sound use for the property and that the Board of Health members are immune from individual liability under G.L.c. 258 (The Massachusetts Tort Claims Act).
For the reasons set forth below, the defendants’ motion to dismiss the plaintiffs’ complaint in its entirety for lack of standing is hereby denied. The defendants’ motion to dismiss Counts I, II, III and IV and that portion of Count VII seeking damages for regulatory taking is also denied. The defendants’ motion to dismiss that portion of Count VII seeking to impose individual liability on the members of the Barnstable Board of Health as well as Count V is hereby allowed.

FACTS

The plaintiffs, Christopher P. Kuhn and Laurie A. Warren are co-owners of a mortgage, executed on October 13, 1989, that is secured by two separate lots designated Lot #38 and Lot #39 Calves Pasture Lane in Barnstable, Massachusetts. While both lots are zoned for residential purposes, sewer connections are not available and no structures are currently located on either lot.
The lots at issue were created by a 1989 subdivision plan (“the Plan”) of a six-acre tract of land. On June 7, 1989, the Barnstable Board of Health (the “Board of Health”) sent a letter to the Barnstable Planning Board (the "Planning Board”) in which it presented the following recommendations:
1. The Developer must provide public water to each and every lot in [the] subdivision.
2. The developer shall have recorded on the deed that variancesfrom Title 5, Minimum Requirements for Subsurface Disposal of Sanitary Sewage, Town of Barnstable Health Regulations, which ever is more stringent, will not be granted on any Lot in this subdivision. (Emphasis in original.)
On June 11, 1989, the Planning Board issued a letter (the “Plan”) approving the subdivision. The Plan delineated wetland areas of 2,727 square feet on Lot #38 and 2,616 square feet of wetland on Lot #39. Under the wetland delineation on the Plan, both lots had locations where septic systems meeting all 1989 requirements could be located without requiring a variance. The June 11, 1989 Planning Board letter approving the subdivision did not explicitly incorporate or reference the June 7, 1989 Board of Health Letter, but did state that approval of the subdivision was ’’subject to . . . [a]ll the requirements of the Board of Health."
On June 11, 1991, the Board of Health adopted a regulation[3] prohibiting the location of a sewage disposal system leaching facility within 100 feet of a water course as defined by state regulations governing the construction of septic systems commonly known as Title 5 of the State Environmental Code (“Title 5”), 310 C.M.R. 15.000. On March 31, 1995, Title 5 was amended to require a greater land area than previously required in order to site a sewage disposal system leaching facility or “soil absorption system.”
*260 In February of 1999, Laurie A. Warren applied for, and, on April 6, 1999, the Barnstable Conservation Commission issued, an Order for Resource Delineation[4] pursuant to G.L.c. 131, §40 (the “Wetlands Protection Act”) and Article XXVII of the Town of Barnstable Ordinances for Lots #38 and #39 (collectively the "Resource Delineations”). The Resource Delineations showed that the wetland area of both lots had significantly expanded from that present when the lots were created in 1989.
As a result of the new Resource Delineations and 1995 amendments to Title 5, it became impossible to locate a septic system on either lot without a variance from the Board of Health’s 1991 100-foot wetland setback requirement. No variance was required from Title 5 requirements.
In the summer of 1999, the plaintiffs contacted the Barnstable Fire District Water Department to inquire as to whether the lots could be connected to the public water system. The plaintiffs were informed that the lots could not be connected because the nearest public water line did not have sufficient capacity for additional connections.
On November 30, 1999, plaintiff Laurie A. Warren filed an application for a variance from the Board of Health’s 100-foot wetland setback requirement for a proposed septic system on Lot #38 as well as the Board of Health’s 150-foot setback requirement for a proposed private well on Lot #38 and for waivers from the requirements set forth in the Board of Health’s June 7, 1989 letter to the Planning Board requiring that public water be supplied to Lot #38 and prohibiting variances. The application did not request a variance from Title 5 requirements because the proposed septic system on Lot #38 met all Title 5 requirements and setbacks.
The Planning Board held public hearings on December 14, 1999 and January 18, 2000. On January 19, 2000, the Board of Health requested that Barnstable Town Counsel provide an opinion as to whether it could rescind the Board of Health recommendations in the June 7, 1989 letter which purported to prohibit the granting of variances from local septic regulations and required a public water connection for each lot. A revised plan for Lot #38 was submitted to the Planning Board on January 27, 2000.
On February 3, 2000, the Planning Board held another public hearing on the variance request for Lot #38 at which representatives of Laurie A. Warren submitted information showing that the proposed septic system would not impact wetland areas on the lot. The Planning Board also received information demonstrating that a public water connection was not available for Lot #38. At the close of the hearing, the Planning Board voted to deny the variance and waiver requests for Lot #38.
On March 24, 2000, 50 days after its February 3, 2000 denial, the Planning Board sent a written statement of its reasons for denying the variance and waiver requests for Lot #38. On April 24, 2000, Laurie A. Warren’s attorney sent a letter to the Planning Board requesting confirmation that her variance and waiver requests were constructively approved due to the Planning Board’s failure to issue a written statement of the reasons for its February 3, 2000 denial within 45 days as required under G.L.c. Ill, §31E and Code.Mass.Regs. 310, §15.411. On April 25, 2000, the Planning Board wrote back indicating that the February 3, 2000 verbal decision to deny the variance and waiver requests was sufficient notice of the denial under all applicable statutes and regulations.
On December 29, 1999, plaintiff Christopher P. Kuhn filed a separate application for variances with the Planning Board seeking waiver of the 100-foot wetland setback and 150-foot well setback requirements as well as waivers of the June 7, 1989 Board of Health requirements as they related to Lot #39. The application listed Christopher P. Kuhn as the “applicant." A revised plan was submitted to the Planning Board on February 22, 2000 and a public hearing was held on March 13, 2000. At the close of the March 13, 2000 public hearing, the Planning Board voted to deny Kuhn’s request for variances for Lot #39.
Notwithstanding that Kuhn was listed as the “applicant” on the variance application, on March 22, 2000, the Planning Board sent a written letter detailing the reasons for its denial of Kuhn’s application to Arne Ojala, an engineer hired by Kuhn to represent him in the variance application process. Kuhn first became aware of the existence of the March 22, 2000 Planning Board letter on April 10, 2000.
By letter dated April 24, 2000, Kuhn’s attorney requested confirmation from the Planning Board that the variance requests for Lot #39 were constructively approved due to the Planning Board’s failure to provide him with a written statement of the reasons for denial within 45 days as required under G.L.c. Ill, §3 IE and Code.Mass.Regs. 310, §15.411. On April 25, 2000, the Planning Board wrote back indicating that its verbal decision at the March 13, 2000 public hearing was sufficient to comply with all applicable statutory requirements.

DISCUSSION

The defendants now move to dismiss the plaintiffs’ complaint in its entirety under Mass.R.Civ.P. 12(b)(1) on the grounds that this Court lacks subject matter jurisdiction over all Counts in the complaint because the plaintiffs lack standing. The issue of “standing” is so closely related to the question whether an “actual controversy” exists that it can properly be raised by motion to dismiss for lack of jurisdiction over subject matter even though it can also be a basis for dismissal for failure to state claim on which relief can be granted. Doe v. Governor, 381 Mass. 702, 705 (1980).
The defendants also move to dismiss Counts I through VII of the complaint for failure to state a claim *261 for which relief may be granted. Under Mass.R.Civ.P. 12(b)(6), "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim.” Nader v. Citron, 372 Mass. 96, 98 (1977). In addition, “the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiffs favor, are to be taken as true.” Id. “[A] complaint is sufficient against a motion to dismiss if it appears that the plaintiff maybe entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely may not be appropriate.” Id. at 104.

1. Standing

The defendants argue that the plaintiffs lack standing because they fail to adequately aver exclusive ownership of the property at issue. According to the defendants, the plaintiffs’ complaint must allege “default and entry into possession” of the lots in question in order to have standing to maintain this suit. The defendants contend that, under Massachusetts law governing property ownership and mortgage foreclosure, the plaintiffs lack standing because their ownership interests in the lots in question is that of a mortgagee subject to the equitable right of redemption of the mortgagor — the true owner of the property.
In, Massachusetts, a mortgage “(Slplits the title [to land] in two parts: the legal title, which becomes the mortgagee’s, and the equitable title, which the mortgagor retains.” Maglione v. BancBoston Mortgage Corp., 29 Mass.App.Ct. 88, 90 (1990). A mortgagor in possession is regarded as the real owner of property as to the world and as to the mortgagee. Negron v. Gordon, 373 Mass. 199 at 206 (1977). Nevertheless, as the Supreme Judicial Court noted in Negron, if a mortgagee exercises the right to enter the premises upon default, the rights of the parties are altered such that the mortgagee acquires additional ownership rights and duties with respect to the property. Id. at n. 6, citing Skolnick v. East Boston Sav. Bank, 307 Mass. 1, 6 (1902). The additional ownership rights and duties are acquired by the mortgagee in possession even if entry into possession is ineffective to foreclose the mortgage. Id.
On its face, the plaintiffs’ complaint alleges outright ownership of the lots at issue in addition to default on the mortgage and lawful entiy onto the property. Since the plaintiffs, mortgagees of the property, have exercised the right to enter the premises, they have acquired additional ownership rights and duties with respect to the property. While the plaintiffs’ present ownership interests in the lots may be subject to an equitable right of redemption, the factual averments that the plaintiffs presently hold legal title to the property and are in lawful possession following default are sufficient to confer standing on the plaintiffs to maintain the present suit. Accordingly, this Court retains subject matter jurisdiction over the plaintiffs’ suit and the defendants’ motion to dismiss the complaint for lack of subject matter jurisdiction under Mass.R.Civ.P. 12(b)(1) is denied.

2. Constructive Grant

The defendants also argue, as additional grounds for dismissal of Counts III and IV of the complaint, that the plaintiffs are not entitled to constructive approval of their requests for variances based on the Planning Board’s failure to meet statutory time limits because Board of Health decisions are not subject to the statutory time constraints applicable to Title 5. The defendants contend that G.L.c. 111, §31E, by its terms, applies to variance requests from state, not local, regulations.
General Lawc. 111, §3IE, in pertinent part, states that upon receiving an application for a variance from sewage regulations, the Board of Health:
[S]hall act upon such completed application for such [variance] within forty-five days from the date upon which such completed application is filed with said [Board of Health). If a determination on a completed application is not rendered within forty-five days . . . then said permit shall be deemed to have been granted.
In the case of a denial, “action on a completed application” under the statute requires that “a written statement of reasons” be sent to the “applicant.” G.L.c. 111, §3 IE. In this case, the plaintiffs adequately state a claim for violation of G.L.c. 111, §3IE. In denying plaintiff Laurie A. Warren’s variance application for Lot #38, the defendants allegedly failed to provide any written notice of the reasons within forty-five days from the date on which the application was filed. As to Lot #39, plaintiff Kuhn acknowledges that the defendants created a written statement of the reasons for its denial of his application, but alleges a violation of G.L.c. 111, §3IE based on the defendants’ failure to send the written statement of reasons to him, the applicant. Thus, with respect to the factual allegations specific to each lot at issue in this case, the plaintiffs adequately stated a claim for violation of G.L.c. 111, §3 IE sufficient to survive the defendants’ motion to dismiss.

3. Preemption

The plaintiffs contend that the local Board of Health regulations relied upon to deny their applications for variances are preempted by Title 5. Alternatively, the plaintiffs argue that, under G.L.c. 111, §31, the Board of Health’s alleged failure to publically state the conditions and reasons for adopting the more stringent regulations renders them unlawful and unenforceable. In contrast, the defendants argue that under Massachusetts law, they are free to promulgate regulations that impose more stringent requirements than those established under Title 5.
Under Massachusetts law, it is well settled that local health boards are free to adopt health regulations *262 that exceed minimum state requirements. T.D.J. Development Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. 124, 126-27. Accordingly, the Barnstable Board of Health regulations at issue in this suit are not preempted under Title 5. Rather, the regulations constitute a lawful exercise the Board of Health’s authority to exercise its regulatory authority. Thus, Count VI of the plaintiffs’ complaint asserting preemption must be dismissed.

4. Untimely Appeal of Planning Board Notice of Conditions

The defendants also argue that the allegations contained in Counts I, II and V, in substance, constitute an appeal of the Planning Board’s original definitive subdivision approval conditions, and thus, are time barred under G.L.c. 41, §8 IBB. In contrast, the plaintiffs contend that Counts I and II of the complaint constitute challenges to the Planning Board’s denial of their 1999 variance requests based on the 1989 Board of Health conditions. Moreover, the plaintiffs contend that the 1989 conditions are unenforceable because the Planning Board’s approval of the subdivision did not incorporate the Board of Health restriction on variances or its recommendation that all lots in the subdivision connect to a public water supply.
The plaintiffs agree that Count V, alleging that the restrictions on variances and public water supplies were unlawfully imposed, is subject to the 20-day appeal period under G.L.c. 41, §81 IBB. Accordingly, Count V is dismissed. However, as to Counts I and II, the plaintiffs’ complaint, on its face, states that it is an appeal from the Planning Board’s denial of their applications for variances from local regulatory provisions. The challenged Planning Board action, denial of the plain tiffs’ variance requests, took place on February 3, 2000 and March 13, 2000 respectively. Accordingly, this action, filed May 22, 2000, is timely and the defendants’ motion to dismiss Counts I and II of the plaintiffs' complaint must be denied.

5. Regulatory Taking

The defendants argue that the plaintiffs’ claim for unlawful regulatory taking of the property must be dismissed because the plaintiffs fail to allege that they could not create a building on the lots in compliance with existing regulations. The plaintiffs contend that, in denying their requests for variances, the Planning Board committed a regulatory taking in violation of their rights under both the state and federal constitutions.
To prevail on their claim for damages stemming from the Town’s alleged regulatory taking, the plaintiffs must show that the Town has regulated their property without substantially advancing a legitimate interest, or that is has denied the plaintiffs economically viable use of their land. Wilson v. Commonwealth, 31 Mass.App.Ct. 757, 764-65 (1992). “Whether a particular governmental action amounts to a taking requires an examination of the character of the governmental action as well as the nature and extent of the governmental interference with the owners’ rights in the property as a whole.” Id.
The complaint alleges that the lots at issue are zoned exclusively for residential use and that there is no location where a septic system of any size can be built without a variance from septic system regulations. The complaint states that the Planning Board’s actions render the lots un-buildable, thereby depriving the plaintiffs of substantially all beneficial use of the property. These allegations, accepted as true for purposes of the defendants’ motion to dismiss the claim under Mass.R.Civ.P. 12(b)(6), adequately state a claim for unlawful regulatory taking of the plaintiffs’ property.

6. Individual Liability of Board Members

The defendants contend that under G.L.c. 258, §§10 and 10(b), the members of the Barnstable Board of Health are immune from liability. General Law c. 258, the Massachusetts Tort Claims Act, shields governmental officials from liability provided they are acting within the scope of their employment duties. G.L.c. 258, §§10. Moreover, their actions cannot support a tort claim when they exercise discretion in performing their duties. G.L.c. 258, §§ 10(b). Here, the plaintiffs seek to impose liability on the individual members of the Planning Board for their allegedly unlawful withholding of variances for the lots aCissue. Under G.L.c. 258, §§10 and 10(b), the actions of the Board members in exercising their discretion to deny the plaintiffs’ requests for variances fall within the scope of their employment duties. Accordingly, the defendants are immune from liability and the plaintiffs’ claim for damages directed at the Planning Board members in their individual capacities must be dismissed.

ORDER

For the foregoing reasons, it is hereby ORDERED that the defendants’ motion to dismiss the plaintiffs’ complaint in its entirety for lack of standing be DENIED. It is further ORDERED that the defendants’ motion to dismiss Counts I, II, III and IV and that portion of Count VII seeking damages for regulatory taking be DENIED. It is further ORDERED that the defendants’ motion to dismiss Counts V and VI as well as that portion of Count VII seeking to impose individual liability on the members of the Barnstable Board of Health be ALLOWED.

 Part VII, Section 10.00, Subsection 1.13.

 Department of Environmental Protection File Nos. SE33494 and SE3-3493 respectively.